******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BANK OF AMERICA, N.A. *v.* DAVID
AUBUT ET AL.
(AC 37896)

Alvord, Keller and Harper, Js.

*Argued March 8—officially released August 2, 2016*

(Appeal from Superior Court, judicial district of
Middlesex, Aurigemma, J. [motion for summary
judgment]; Domnarski, J. [judgment].)

*Gary L. Seymour*, for the appellants (defendants).

*Elizabeth T. Timkovich*, with whom, on the brief,
was *Pierre-Yves Kolakowski*, for the appellee (substitute plaintiff).

*Opinion*

KELLER, J. In this residential foreclosure action, the defendants, David Aubut and Karen Aubut,[1] appeal following the trial court's judgment of strict foreclosure rendered in favor of the substitute plaintiff, Nationstar Mortgage, LLC. On appeal, the defendants claim that the court erred in rendering summary judgment as to liability only in favor of the substitute plaintiff because: (1) the court improperly concluded that there was no genuine issue of material fact as to whether Karen Aubut was provided with preacceleration notice of default in the manner required by the terms of the mortgage; (2) the court improperly accepted an affidavit submitted in support of the substitute plaintiff's motion for summary judgment; and (3) the court improperly concluded as a matter of law that the defendants could not prevail with respect to their special defenses. We agree, in part, with the defendants' third claim. Accordingly, we reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. On September 29, 2009, the defendants executed and delivered a note and mortgage deed to the original, named plaintiff in this action, Bank of America, N.A., in order to obtain a loan to purchase a home in Middletown. The defendants subsequently defaulted on their payments beginning with the payment due on August 1, 2011. On September 16, 2011, the original plaintiff mailed a preacceleration notice of default that was addressed to David Aubut, indicating that the defendants were in default and that it would accelerate the balance on the loan if they did not cure the default on or before October 16, 2011. The defendants failed to cure the default and the debt was accelerated.

On May 20, 2012, the original plaintiff commenced a foreclosure action against the defendants. In its complaint, the original plaintiff alleged, inter alia, that the defendants had defaulted on their mortgage payments and that they had failed to cure the default. The original plaintiff alleged that, as a result, it had elected to accelerate the balance due on the note and to foreclose the mortgage on the defendants' home. On June 5, 2012, the defendants requested to participate in a foreclosure mediation program. Although the defendants did participate in the mediation program from June 9, 2012, to May 30, 2013, they were unsuccessful in reaching an amicable resolution. The defendants filed for bankruptcy in June, 2013. On or about November 13, 2013, the original plaintiff filed a notice of relief from the bankruptcy stay due to the fact that the bankruptcy case had been closed.

On March 28, 2014, the original plaintiff executed an assignment of the mortgage, whereby the substitute plaintiff, as the original plaintiff's attorney in fact,

assigned the mortgage to itself. The substitute plaintiff's involvement in the foreclosure action began after the court granted the original plaintiff's June 18, 2014 motion to substitute on June 30, 2014. On July 18, 2014, the defendants filed their disclosure of defense, as well as their answer, which contained special defenses and a three count counterclaim.

On October 30, 2014, the substitute plaintiff filed a motion for summary judgment. The substitute plaintiff, in its memorandum of law in support of the motion, argued that there were no genuine issues of material fact regarding the defendants' liability under the note and the mortgage, and that summary judgment was proper because the defendants' special defenses and counterclaim were legally insufficient. In support of its motion, the substitute plaintiff submitted copies of several documents, including, in relevant part: the note and the mortgage deed that the defendants had executed and delivered to the original plaintiff; the September 16, 2011 preacceleration notice of default mailed by the original plaintiff; the March 28, 2014 assignment of mortgage wherein the substitute plaintiff had assigned itself the mortgage; records documenting the defendants' mortgage payment history; and an affidavit of Fay Janati, an employee of the substitute plaintiff, in which she averred that the defendants were in default and that they were liable to the substitute plaintiff for the balance of the mortgage loan that they had failed to pay pursuant to their mortgage agreement.

On January 13, 2015, the defendants filed their opposition to summary judgment and an accompanying memorandum of law. In support of their opposition, the defendants also submitted copies of several documents, including: paragraph twenty-two of the mortgage deed; a January 13, 2015 notice sent by the defendants' counsel notifying the original plaintiff and the substitute plaintiff that Karen Aubut was rescinding the mortgage pursuant to § 1635 of the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq.; a printed copy of Janati's LinkedIn profile; a job description of the "Litigation Research Analyst" position posted by the substitute plaintiff; the March 28, 2014 assignment of mortgage; Janati's affidavit; and an affidavit of David Aubut.

On January 26, 2015, the court issued a memorandum of decision wherein it rendered summary judgment as to liability only in favor of the substitute plaintiff. Thereafter, the court rendered judgment of strict foreclosure in favor of the substitute plaintiff. This appeal followed. Additional procedural history and facts shall be set forth as necessary.

I

The defendants first claim that the court erred in rendering summary judgment in the substitute plaintiff's favor because it improperly concluded that there

was no genuine issue with respect to whether Karen Aubut, as a "Borrower" listed under the mortgage deed, was provided with preacceleration notice of default in the manner required by the terms of the mortgage. We disagree.

The following additional procedural history and facts are relevant to this claim. In their opposition to the substitute plaintiff's motion for summary judgment, the defendants argued that the preacceleration notice of default that the substitute plaintiff sent to David Aubut created a genuine issue of material fact as to whether the substitute plaintiff had established a prima facie case to institute the foreclosure action. Specifically, in their opposition memorandum of law, the defendants argued the following with respect to this issue: "In its complaint and affidavit in support of its motion [for] summary judgment, [the substitute plaintiff] alleges that it gave proper notice of intent to accelerate to [the defendants] as borrowers as required by paragraph [twenty-two] of the subject mortgage. . . . A review of the notice reveals that it is deficient as follows . . . It is only addressed to David Aubut and not Karen Aubut (consistent with [the Truth in Lending Act] failure to provide notice of [the] right to rescind). . . . Based on the foregoing, [the substitute plaintiff] cannot make its prima facie case, as it did not, as [a] condition precedent to the institution of foreclosure, properly provide [the defendants] with a notice of default in compliance with the terms of the mortgage."

In its memorandum of decision, the court, relying on Janati's affidavit, stated that "[b]y letter dated September 16, 2011, and sent by certified mail to the property address [for the home subject to the mortgage], [the original plaintiff] notified the defendants of the default. The defendants have failed to cure the default." At the conclusion of its memorandum of decision, the court stated that the substitute plaintiff had "presented evidence that it sent a [preacceleration notice of default] which complied with the terms of the loan documents." The court set forth in its legal analysis of the substitute plaintiff's prima facie case for its foreclosure action, and the court also discussed the evidence submitted in support of summary judgment with respect to this issue: "As evidenced by the mortgage deed, the defendants gave the [substitute] plaintiff's predecessor in interest a mortgage to secure the payment of the note. The terms of the mortgage determine the [substitute] plaintiff's right to foreclosure [of] the mortgage. . . . In the present case, the note and mortgage deed provide that upon a default under the promissory note, the [substitute] plaintiff is entitled to foreclosure on the mortgage, to demand immediate payment of all sums due and owing, and to collect all expenses incurred in pursuing its remedy. When the [substitute] plaintiff establishes its ownership of the note and satisfies the court of a defendant's failure to make payments according to the

note, the [substitute] plaintiff establishes its right to avail itself of such security as the mortgage affords. . . . In other words, in order to make out a prima facie case in [a] foreclosure action, the [substitute] plaintiff must prove by a preponderance of the evidence that it [is] the owner of the note and mortgage and that [the defendant has] defaulted on the note. . . . In this case, it is alleged that the defendant, David Aubut, executed the note in the original principal amount of $189,957. The [substitute] plaintiff has presented evidence that the [substitute] plaintiff is the holder of the note and mortgage, which mortgage was executed by the defendants; the note and mortgage are in default; the [substitute] plaintiff has elected to accelerate the indebtedness; and the defendants were duly notified in writing of the default. Again, the party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. It is not enough for the opposing party merely to assert the existence of a disputed issue. The defendants have not provided such foundation." (Citations omitted; internal quotation marks omitted.)

The court also noted that in addition to their properly pleaded special defenses, the defendants had attempted to raise additional defenses to the foreclosure in their opposition to the substitute plaintiff's motion for summary judgment: a defense asserting a violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., as well as a defense alleging "failure to give proper notice of the acceleration of the note." The court then stated that "[t]he defendants have not pleaded these defenses in their special defenses," and that the substitute plaintiff had "presented evidence that it sent a notice of acceleration which complied with the terms of the loan documents."

On appeal, the defendants argue that a genuine issue of material fact exists with respect to whether they were sent proper preacceleration notice of default. They assert, correctly, that in order to establish its prima facie case to commence a foreclosure action, the substitute plaintiff must prove that all conditions precedent to foreclosure have been satisfied. The defendants argue that, pursuant to the terms of the mortgage, the proper delivery to both defendants of the preacceleration notice of default was a condition precedent to foreclosure. The defendants allege that no evidence was submitted to demonstrate that Karen Aubut received the preacceleration notice of default. The defendants argue that a genuine issue of material fact exists with respect to the propriety of the preacceleration notice of default because although the evidence submitted by the parties in support of or in opposition to summary judgment shows that the preacceleration notice of default was addressed to one defendant, David Aubut, and that only he had signed the note, paragraph twenty-two of the mortgage deed provides that "Borrower"

shall be given preacceleration notice, and the first page of the deed defines "Borrower" as "David J. Aubut and Karen Z. Aubut."

The substitute plaintiff argues that the court properly concluded that there was no genuine issue of material fact with respect to the preacceleration notice of default. The substitute plaintiff argues that the defendants' argument that notice to both David Aubut and Karen Aubut was a condition precedent to the foreclosure action is flawed because, despite the fact that the mortgage deed defines both David Aubut and Karen Aubut as "Borrower," the note identifies only David Aubut as the borrower and also provides, in paragraph 6 (C), that "If *I* am in default, the Note Holder may send *me* a written notice telling me that if *I* do not pay the overdue amount by a certain date, the Note Holder may require *me* to pay immediately the full amount of Principal which has not been paid and all the interest *I* owe on that amount."[2] (Emphasis added.) Alternatively, the substitute plaintiff asserts that even if notice to David Aubut and Karen Aubut was a condition precedent to the foreclosure action, the defendants never submitted any evidence to the court to contradict Janati's affidavit wherein she averred that, on September 16, 2011, *both defendants* were given preacceleration notice of default on their mortgage payments. We agree with the substitute plaintiff that the court did not err in concluding that there was no genuine issue of material fact with respect to the preacceleration notice of default that was sent to the defendants.

We begin our analysis with the appropriate standard of review. "On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . [O]ur review is plenary and we must decide whether the [trial court's] conclusions are legally and logically correct and find support in the facts that appear on the record. . . .

"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . .

are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book [§ 17-45]. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . .

"[B]ecause the [substitute] plaintiff sought summary judgment in a foreclosure action, which is an equitable proceeding, we note that the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . .

"In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." (Citation omitted; internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 390–92, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014); accord *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013); see also *Franklin Credit Management Corp.* v. *Nicholas*, 73 Conn. App. 830, 838, 812 A.2d 51 (2002), cert. denied, 262 Conn. 937, 815 A.2d 136 (2003). "A promissory note and a mortgage deed are deemed parts of one transaction and must be construed together as such. . . . Where the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure." (Internal quotation marks omitted.) *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 707, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002).

In the present case, although on appeal the parties disagree with respect to whether notice to both David Aubut and Karen Aubut was a condition precedent to the foreclosure action, we need not resolve that issue. Assuming, as the defendants argue, that such notice to both defendants was required, we conclude that the defendants failed to demonstrate that a genuine issue of material fact exists with respect to whether such notice had been given. On the basis of our review of the documentary proof submitted by the substitute

plaintiff in support of its motion for summary judgment, as well as the documentary proof submitted by the defendants in support of their opposition, we conclude that the court did not err in its determination that there was no genuine issue of material fact with respect to the propriety of the preacceleration notice of default. The definitions section of the mortgage deed defines "Borrower" as "David J. Aubut and Karen Z. Aubut," and paragraph twenty-two of the mortgage deed sets forth the following with respect to acceleration: "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . ." The September 16, 2011 preacceleration notice of default was addressed only to David Aubut. We note, however, that only David Aubut signed the note and that the note provides that he is entitled to receive preacceleration notice of default. Furthermore, Janati, a representative of the substitute plaintiff, averred in her affidavit that "[b]y letter dated September 16, 2011 and sent by certified mail to the subject property address on that date, *the Defendants* were duly notified of the default." (Emphasis added.)

In support of their opposition to the substitute plaintiff's motion for summary judgment, the defendants submitted, inter alia, paragraph twenty-two of the mortgage deed, a January 13, 2015 notice sent by the defendants' counsel notifying the original plaintiff and the substitute plaintiff that Karen Aubut was rescinding the mortgage pursuant to § 1635 of the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., Janati's affidavit, and an affidavit of David Aubut. Potentially, an affidavit submitted by Karen Aubut would have been significant with respect to the issue of whether she had received notice, but the defendants did not submit proof of such nature to the court. Furthermore, David Aubut did not make any averments, from personal knowledge, that Karen Aubut had not received proper preacceleration notice of default as required by the terms of the mortgage deed and the note. We iterate that the defendants were required to "recite specific facts . . . which contradict those stated in the movant's affidavits and documents" in order to defeat the substitute plaintiff's motion for summary judgment. (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, supra, 149 Conn. App. 391. The substitute plaintiff, through the documentary proof submitted in support of its motion for summary judgment, met its burden of establishing the nonexistence of a genuine issue of material fact with respect to the preacceleration notice of default. Given that the defendants, in their opposition to the substitute plaintiff's motion, did not state *specific facts* to contradict the proof submitted by the substitute plaintiff showing that both defendants were sent preacceleration notice of default, we conclude that the defendants failed to establish the existence of a genuine issue of material

fact with respect to the preacceleration notice of default. Thus, we conclude that the court did not err in determining that there was no genuine issue concerning whether the original plaintiff—and the substitute plaintiff, through assignment of the mortgage—thereby satisfied all of the conditions precedent to institute the foreclosure action against the defendants.

## II

Next, the defendants claim that the court erred in rendering summary judgment because it accepted Janati's affidavit, which had been submitted to the court in support of the substitute plaintiff's motion for summary judgment. We disagree.

The following additional procedural history and facts are relevant to this claim. In her affidavit, Janati averred that she was employed by the substitute plaintiff as a "Litigation Resolution Analyst." Janati averred that, in this capacity, she had reviewed the records of the defendants' mortgage payments and that she was personally familiar with these records. Janati averred that the defendants were in default under the terms of the mortgage and that they were sent preacceleration notice of default on September 16, 2011. Janati also averred that the substitute plaintiff was the mortgagee, that it was the holder of the note, that it was in possession of the note, and that it had satisfied "any and all conditions precedent to enforcing this [mortgage] instrument." The acknowledgement portion of the affidavit, which appears at the very end of the affidavit, states in relevant part: "Subscribed and sworn to before me on this 29 day of October, 2014, before me, the undersigned officer, personally appeared, Fay Janati, who acknowledged himself/herself to be *the Assistant Secretary of Nationstar Mortgage, LLC*, and that s/he, as such officer, being authorized to do, executed the foregoing instrument for the purposes therein contained and subscribed, swore and acknowledged the same to be his/her free act and deed and the free act and deed on behalf of Nationstar Mortgage, LLC." (Emphasis added.) Below the acknowledgement appears the signature of the notary public before whom Janati appeared.

The defendants, in support of their opposition to summary judgment, submitted, inter alia, Janati's affidavit, a printed copy of Janati's LinkedIn profile, a job description of the "Litigation Research Analyst" position posted by the substitute plaintiff, and an affidavit of David Aubut. The court, in its memorandum of decision, discussed and indicated its reliance upon Janati's affidavit in rendering its decision, wherein it concluded that there was no genuine issue of material fact and that the substitute plaintiff was entitled to summary judgment as a matter of law.

On appeal, the defendants claim that the court improperly accepted Janati's affidavit in support of the

substitute plaintiff's motion for summary judgment because it reflects that Janati held two different positions for the substitute plaintiff. The defendants claim that this fact somehow casts doubt on her ability to testify competently about the subject matter of her affidavit. In opposition, the substitute plaintiff argues that, in terms of whether the affidavit was properly accepted by the court, it is inconsequential that Janati averred that she occupied two different positions for the substitute plaintiff, a private entity, because that fact does not suggest anything improper. Furthermore, the substitute plaintiff argues that the court properly accepted the affidavit because the defendants did not submit a legally sufficient affidavit or other documentation to contradict the averments in Janati's affidavit or to challenge her ability to testify competently with respect to the matters in the affidavit. We agree with the substitute plaintiff that the court did not err in accepting Janati's affidavit.

We begin our analysis of this claim with the appropriate standard of review. "In reviewing the legal basis for summary judgment, this court properly may consider facts contained in the affidavits submitted in support of, or in opposition to, the motion." *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 533, 923 A.2d 638 (2007). "Whether the court should have considered . . . [an] affidavit submitted by [the movant for summary judgment] presents an evidentiary issue to which we apply an abuse of discretion standard of review." *Bruno* v. *Geller*, 136 Conn. App. 707, 716, 46 A.3d 974, cert. denied, 306 Conn. 905, 52 A.3d 732 (2012); accord *Wilderman* v. *Powers*, 110 Conn. App. 819, 828, 956 A.2d 613 (2008); *Barlow* v. *Palmer*, 96 Conn. App. 88, 91, 898 A.2d 835 (2006).

Practice Book § 17-45 provides in relevant part that "[a] motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . ." Importantly, Practice Book § 17-46 also requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ." "[I]n considering a motion for summary judgment, [i]t is within the court's discretion whether to accept or decline [to accept] . . . supplemental evidence." (Internal quotation marks omitted.) *Bruno* v. *Geller*, supra, 136 Conn. App. 715. "[T]he touchstone of competence is personal knowledge . . . [which] is variously described as knowledge acquired firsthand or from observation. . . . Determining whether an affiant has personal knowledge requires close examination of the averments set forth in the affidavit, and the character of such averments will depend significantly upon the nature of the underlying action." (Citations omitted; internal quotation marks

omitted.) *State* v. *Sunrise Herbal Remedies, Inc.*, 296 Conn. 556, 573, 2 A.3d 843 (2010). Pursuant to our Supreme Court's holding in *Evans Products Co.* v. *Clinton Building Supply, Inc.*, 174 Conn. 512, 391 A.2d 157 (1978), we do not presume that a corporate officer is necessarily competent to testify on behalf of a corporation. Accordingly, an affiant making averments on behalf of a corporate entity in the context of summary judgment proceedings "must aver or affirmatively show personal knowledge of the matters stated therein." Id., 515.

In the present case, Janati affirmatively demonstrated that she had personal knowledge of the matters stated within her affidavit. Janati averred that she was employed by the substitute plaintiff as a litigation resolution analyst and that, in that capacity, she had reviewed and had acquired personal knowledge of the defendants' obligations under their mortgage. Janati averred that she had personal knowledge of "payment histories, loan histories, servicing records, and default notices" as they applied to the defendants. Janati averred that these records were maintained in the ordinary course of the substitute plaintiff's business, that she had personal knowledge of the process by which the records were created and maintained, and that she knew that the records were accurate. Janati then averred, inter alia, that the defendants were in default with respect to their payments under the terms of the mortgage, that they had failed to cure the default, and that they were liable to the substitute plaintiff.

In the affidavit, Janati averred that she was a "Litigation Resolution Analyst" for the substitute plaintiff. The affidavit describes Janati as having acknowledged herself also to be the "Assistant Secretary" of the substitute plaintiff. The mere fact that the affidavit reflects that Janati held two different positions with the substitute plaintiff does not call into question her competence to testify about the records concerning the defendants' mortgage with the substitute plaintiff. The defendants did not submit any proof that cast doubt on Janati's competence to testify with respect to the matters set forth in the affidavit, and her averments concerning the defendants' mortgage records were adequate to establish her personal knowledge concerning the matters set forth in the affidavit. Therefore, we conclude that the court did not abuse its discretion in accepting the affidavit in support of the substitute plaintiff's motion for summary judgment.

### III

Finally, the defendants claim that the court improperly concluded as a matter of law that they could not prevail with respect to their special defenses. Because we conclude that the defendants' predatory lending special defense was legally valid and that they demonstrated that a genuine issue of material fact existed

with respect to that special defense, we agree, in part, with the defendants' claim.

The following additional procedural history and facts are relevant to this claim. In the defendants' answer, they set forth two special defenses.[3] The first special defense was entitled, "Predatory Lending," and the second special defense alleged a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[4] In its memorandum of law in support of its motion for summary judgment, the substitute plaintiff argued that it could not be subject to the defendants' special defenses because they were not recognized defenses, they were legally insufficient, and they could not be raised against the substitute plaintiff because of its status as an assignee of the mortgage.

The court rejected the defendants' CUTPA defense, concluding in its memorandum of decision that the defendants had failed to assert a traditional equitable defense challenging the making, validity, or enforcement of the note or the mortgage. The court also rejected the defendants' "predatory lending" defense, stating: "As [pleaded] by the defendants in the instant action, the . . . special defense of 'predatory lending' is neither a legally recognized special defense which can stand on its own, nor could the allegations contained therein be construed to constitute a valid, legally sufficient, or traditionally recognized special defense to a foreclosure action. The defendants do not allege that there were any elements of fraud, misrepresentation, or any other form of inducement on the part of any party, and certainly do not allege any such conduct on the part of the [substitute plaintiff]. Since the defense or claim of predatory lending is nonexistent, no amount of repleading could cure such a defect and, as a result, the special defense and counterclaim is properly challenged by a motion for summary judgment.

"Even assuming that a special defense of 'predatory lending' exists, the defendants have failed to plead sufficient facts which would satisfy the definition contained in [*Monetary Funding Group, Inc.* v. *Pluchino,* Superior Court, judicial district of Fairfield, Docket No. CV-010382851-S, LEXIS 2442 (September 3, 2003), aff'd, 87 Conn. App. 401, 867 A.2d 841 (2005)]. They assert merely that the loan which was originated by [the original plaintiff] was unaffordable. The court notes that notwithstanding this allegation, the defendants made payments under the note for some two years prior to going into default."

Furthermore, with respect to both of the defendants' special defenses, the court agreed with the substitute plaintiff that it could not properly be subject to the special defenses, given that it was an assignee of the mortgage, it had not expressly assumed any liabilities of the original plaintiff, and the allegations contained within the defendants' special defenses focused on the

conduct of the original plaintiff, the assignor.

On appeal, the defendants argue that the trial court erred in its conclusion that the substitute plaintiff, due to its status as an assignee, could not be subject to the defendants' special defenses. Also, the defendants argue that the court erred in its conclusion that the special defenses were not legally viable. The substitute plaintiff argues that the court properly concluded that it could not be subject to the defendants' special defenses because it was an assignee of the mortgage and did not expressly assume any of the original plaintiff's liabilities. Alternatively, the substitute plaintiff argues that even if it was subject to the defendants' special defenses, the court properly rendered summary judgment in its favor because the defendants' special defenses were legally insufficient.

We begin our analysis of this claim by noting the appropriate standard of review. Given that the issues involved in this claim are legal in nature, as opposed to factual or discretionary in nature, we exercise plenary review. *Hartford* v. *McKeever*, 139 Conn. App. 277, 283, 55 A.3d 787 (2012), aff'd, 314 Conn. 255, 101 A.3d 229 (2014).

Next, we address the propriety of the court's conclusion that the substitute plaintiff could not be subject to special defenses because of its status as an assignee. In *Hartford* v. *McKeever*, supra, 139 Conn. App. 277, this court stated: " '[A]n assignee of a contract takes it subject to all *defenses* which might have been asserted against the assignor' . . . *Fairfield Credit Corp.* v. *Donnelly*, 158 Conn. 543, 548, 264 A.2d 547 (1969); but does not take it subject to *affirmative claims* against the assignor arising from the assignor's prior conduct without [the assignee's] express assumption of such liability. . . . If, then, in defense of a foreclosure action brought against him by an assignee of his note and mortgage, the mortgagor defends on the basis that the value of the note at the time of the assignment was less than that claimed by the assignee, the mortgagor may be entitled to a setoff on the ground that the assignee took the note subject to the state of accounts between the assignor and the mortgagor at the time of the assignment. If, on the other hand, the mortgagor responds to the foreclosure action by filing a counterclaim based upon his alleged overpayment of the loan prior to the assignment, the mortgagor must bring a separate claim against the assignor to recover the alleged overpayment unless the assignee has assumed liability for the assignor's preassignment conduct." (Emphasis in original.) *Hartford* v. *McKeever*, supra, 286. Thus, a mortgagor is precluded from bringing *counterclaims* against an assignee of a note and mortgage if such assignee has not expressly assumed the liabilities of the original assignor, but it does not prohibit mortgagors from asserting, against an assignee, *special defenses* that go

to the making, enforcement, or validity of the note and mortgage.

In the present case, the corporate assignment of the defendants' mortgage provided that the original plaintiff assigned to the substitute plaintiff the mortgage along with "the full benefit of all the powers and of all the covenants and provisos therein contained . . . ." It did not expressly provide that the substitute plaintiff assumed the liabilities of the original plaintiff. Therefore, pursuant to the rule set forth in *Hartford* v. *McKeever*, supra, supra, 139 Conn. App. 286, the substitute plaintiff did not take the note secured by the defendants' mortgage subject to any affirmative claims that could be brought by the defendants. Pursuant to this same rule, however, the substitute plaintiff did take the note subject to all defenses that could be asserted by the defendants, including equitable defenses. Thus, the court erred in its conclusion that the defendants could not raise special defenses against the substitute plaintiff solely because of its status as an assignee.

Having concluded that the defendants were not precluded as a matter of law from raising special defenses against the substitute plaintiff, we next consider whether the court, in rendering summary judgment, properly concluded that the defendants' purported special defenses were not legally viable. We shall discuss these defenses separately.

### A

### CUTPA Violation

The defendants argue that the court erred by concluding that their CUTPA special defense was not legally viable. Specifically, the defendants contend that they pleaded sufficient facts to raise a genuine issue of material fact as to whether the substitute plaintiff engaged in behavior prohibited by General Statutes § 42-110b (a), which provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The substitute plaintiff argues that the defendants' CUTPA defense is legally insufficient because they failed to provide adequate evidence to the court to demonstrate that a violation of § 42-110b (a) occurred. Because we conclude that the defendants in this foreclosure action could not properly assert a CUTPA violation as a special defense, we conclude that the court properly rendered summary judgment in the substitute plaintiff's favor with respect to this issue.

"A foreclosure action is an equitable proceeding." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Khatun*, 146 Conn. App. 618, 620, 78 A.3d 222 (2013). "A valid special defense at law to a foreclosure proceeding must be legally sufficient and address the making, validity or enforcement of the mortgage, the note or both." (Internal quotation marks omitted.)

*Fidelity Bank* v. *Krenisky*, supra, 72 Conn. App. 705. "Historically, defenses to a foreclosure action have been limited to payment, discharge, release or satisfaction . . . or [lien invalidity] . . . . [Connecticut courts, however] have permitted several equitable defenses to a foreclosure action." (Internal quotation marks omitted.) *Chase Manhattan Mortgage Corp.* v. *Machado*, 83 Conn. App. 183, 188, 850 A.2d 260 (2004).

The parties have not drawn our attention to any appellate authority with respect to the issue of whether, in a foreclosure action, a party may assert a CUTPA violation as a special defense, and we are unaware of any such authority. Although it appears from our research that some trial courts in this state have permitted a CUTPA violation to be pleaded as a special defense in foreclosure actions, other trial courts have concluded to the contrary. See R. Langer et al., 12 Connecticut Practice Series: Unfair Trade Practices (2015) § 6.13.

In resolving the issue, we must carefully distinguish between a cause of action and a special defense. At issue in the present claim is not the legal validity of a claim or a counterclaim, but the legal validity of purported special defense. A cause of action, brought by means of a complaint or a counterclaim, is a means of seeking redress for having suffered harm. See, e.g., Black's Law Dictionary (6th Ed. 1990) (defining "cause of action" in part as "[t]he fact or facts which give a person a right to judicial redress or relief against another. . . . A situation or state of facts which would entitle party to sustain action and give him right to seek a judicial remedy in his behalf."). In contrast, "[t]he purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that [a] plaintiff has no cause of action." (Internal quotation marks omitted.) *TD Bank, N.A.* v. *M.J. Holdings, LLC*, 143 Conn. App. 322, 326, 71 A.3d 541 (2013).

"CUTPA provides a private cause of action to [a]ny person who suffers any ascertainable loss of money . . . as a result of the use or employment of a [prohibited] method, act or practice . . . ." (Internal quotation marks omitted.) *Ulbrich* v. *Groth*, 310 Conn. 375, 409–10, 78 A.3d 76 (2013). This court previously has stated that "[t]he public policy underlying CUTPA is to encourage litigants to act as private attorneys general and to engage in bringing actions that have as their basis unfair or deceptive trade practices." (Internal quotation marks omitted.) *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 794–95, 720 A.2d 242 (1998). A CUTPA claim is an affirmative cause of action that may be asserted as a means of recovery for having suffered actual harm. See General Statutes § 42-110g (a) ("[a]ny person who suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by

section 42-110b, may bring an action . . . to recover actual damages").

As we have stated previously in this opinion, "[a] valid special defense at law to a foreclosure proceeding must be legally sufficient and address the making, validity or enforcement of the mortgage, the note or both." (Internal quotation marks omitted.) *Fidelity Bank* v. *Krenisky*, supra, 72 Conn. App. 705. "Practically speaking . . . neither this court nor our Supreme Court has ever expressed a finite list of equitable defenses available in a foreclosure action. Typically, [t]he assertion of equitable defenses to a mortgage foreclosure requires that the defenses . . . challenge the making, validity and enforcement of the loan note and mortgage. This principle was . . . considered to include events leading up to the execution of the loan documents, exclusive of issues involving administration of the loan, such as misapplication of payments. . . . Nevertheless, given the equitable nature of a foreclosure action, events subsequent to the execution of the loan documents also have been considered." (Citation omitted; internal quotation marks omitted.) *TD Bank, N.A.* v. *M.J. Holdings, LLC*, supra, 143 Conn. App. 328.

It is clear from our case law that, generally, a legally valid special defense in a foreclosure action, insofar as it relates to the making, validity, or enforcement of the loan, note and mortgage, is a means of asserting that a party who has commenced a foreclosure action may not prevail. Thus, a special defense operates as a shield, to defeat a cause of action, and not as a sword, to seek a judicial remedy for a wrong. Against this backdrop, we readily conclude that a CUTPA violation may not be asserted as a special defense. In reaching this conclusion, we are mindful that, by its express terms, CUTPA provides a cause of action for its violation, but it does not expressly provide a defense by invalidating, or otherwise rendering unenforceable, agreements that are the product of unfair trade practices. See General Statutes § 42-110a et seq.; see also 12 R. Langer et al., supra, § 6.13.

Some trial courts have expressed the view that a CUTPA violation may be raised as a special defense in a foreclosure action, against an assignee, in cases in which the assignee "was somehow involved in the unfair trade practice or had an agency relationship with the loan originator . . . ." *PHH Mortgage Corp.* v. *Traylor*, Superior Court, judicial district of New London, Docket No. CV-07-5004315, LEXIS 2868, *12 (November 13, 2008) (*Martin, J.*); see also *JP Morgan Chase National Bank* v. *McPhaden*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-09-5009848, LEXIS 2307 (September 14, 2010) (*Mintz, J.*). Even if we were to adopt this type of broader view of CUTPA, it would not benefit the defendants in the present case. In their special defense alleging a CUTPA

violation, the defendants failed to allege that the *substitute plaintiff* engaged in any conduct that ran afoul of CUTPA, but alleged that the original plaintiff had originated the loan at issue. The defendants failed to allege that an agency relationship existed between the original plaintiff and the substitute plaintiff, but alleged in conclusory fashion that the substitute plaintiff was liable for all of the actions of the original plaintiff.[5] See footnote 3 of this opinion.

For all of the foregoing reasons, we conclude that the court properly concluded that the alleged CUTPA violation was not a valid special defense, and that it therefore did not preclude the rendering of summary judgment in the substitute plaintiff's favor.

B

Predatory Lending

The defendants also argue that the court erred by concluding that its predatory lending special defense did not preclude the rendering of summary judgment in the substitute plaintiff's favor. The defendants argue that predatory lending is properly pleaded as an independent special defense, and they urge this court to deem predatory lending to be a recognized equitable defense with respect to the making, enforcement, and validity of the note and mortgage. The defendants also argue, alternatively, that their predatory lending allegations should be recognized as falling within the legal ambit of other recognized special defenses, such as fraud, unclean hands, unconscionability, and equitable estoppel. The substitute plaintiff argues that the court properly rendered summary judgment because the defendants' reliance on a special defense of predatory lending was legally unsound, as predatory lending is not a recognized special defense and the defendants' allegations were legally insufficient to withstand summary judgment.

As we have set forth previously, the court concluded that the defendants' predatory lending special defense was not legally viable. Our research reveals that some Connecticut trial courts have considered allegations of "predatory lending" to constitute special defenses, but there is no legal authority that coherently defines such a defense. Similarly, there is a dearth of Connecticut case law analyzing predatory lending allegations. The defendants, however, argue that their predatory lending allegations should be considered within the context of the recognized equitable defenses of fraud, unclean hands, unconscionability, and equitable estoppel. In their memorandum of law in opposition to the substitute plaintiff's motion for summary judgment, the defendants raised a similar argument before the trial court. The defendants argue on appeal that the court erred in rendering summary judgment in the substitute plaintiff's favor because it should have interpreted their pred-

atory lending allegations in the context of these other recognized special defenses. Moreover, the defendants argue that they demonstrated that a genuine issue of material fact existed with respect to their allegation that the substitute plaintiff—through its actions with the defendants—had engaged in behavior that implicated these recognized special defenses.

We first must focus our analysis on the precise nature of the special defense at issue. "The interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . Furthermore, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . . [T]he practice of reading pleadings broadly applies to special defenses as well. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citations omitted; internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co.*, *LLC*, 312 Conn. 286, 299–300, 94 A.3d 553 (2014).

Although the defendants entitled their special defense "Predatory Lending," they did not merely rely on a bald assertion that the original plaintiff had engaged in "predatory lending" practices. Instead, in twenty-seven paragraphs, they set forth allegations in support of that purported special defense. See footnote 3 of this opinion. Notably, the defendants set forth detailed allegations concerning the financial circumstances of David Aubut at the time of the making of the loan at issue. Among other allegations, the defendants alleged that David Aubut's income, the sole source of income for the defendants' household, was $36,000 per year. His take-home pay was $1950 per month. He owed $45,000 in credit card debt and $132,000 on an existing mortgage. The defendants alleged, in relevant part, that monthly payments on the new loan were approximately $1400 per month, which comprised more than 70 percent of David Aubut's take-home pay, leaving him approximately $550 per month to pay other expenses. The defendants alleged that "[a]t the time of the subject loan, [David Aubut] was insolvent within the definition

of the United States Bankruptcy Code."

Apart from these specific allegations concerning David Aubut's financial situation at the time of the loan, the defendants alleged that the original plaintiff "had offered [David Aubut] a mortgage on his principal residence that it knew or should have known [he] could not afford" and "knew or should have known that at the time this loan was made [David Aubut] was insolvent." The defendants alleged that "[t]he subject loan was predatory in nature and destined to fail from [its] inception."

It is well settled "that a trial court in foreclosure proceedings has discretion, on equitable considerations and principles, to withhold foreclosure or to reduce the amount of the stated indebtedness." *Hamm* v. *Taylor*, 180 Conn. 491, 497, 429 A.2d 946 (1980). We briefly define some of the equitable defenses that the defendants alleged to have invoked by way of their predatory lending special defense. "Fraud and unconscionability are well recognized special defenses in foreclosure actions. . . . Fraud involves deception practiced in order to induce another to act to her detriment, and which causes that detrimental action. . . . The four essential elements of fraud are (1) that a false representation of fact was made; (2) that the party making the representation knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment. . . . Because specific acts must be pleaded, the mere allegation that a fraud has been perpetrated is insufficient. . . .

"The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise. . . . As applied to real estate mortgages, the doctrine of unconscionability draws heavily on its counterpart in the Uniform Commercial Code which, although formally limited to transactions involving personal property, furnishes a useful guide for real property transactions. . . . As Official Comment 1 to § 2-302 of the Uniform Commercial Code suggests, [t]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The determination of unconscionability is to be made on a case-by-case basis, taking into account all of the relevant facts and circumstances." (Citations omitted; internal quotation marks omitted.) *CitiMortgage, Inc.* v. *Coolbeth*, 147 Conn. App. 183, 189, 81 A.3d 1189 (2013), cert. denied, 311 Conn. 925, 86 A.3d 469 (2014). "The classic definition of an unconscionable contract is one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other. . . . The doctrine of unconscio-

nability, as a defense to contract enforcement, generally requires a showing that the contract was both procedurally and substantively unconscionable when made— i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . ." (Citations omitted; internal quotation marks omitted.) *Bender* v. *Bender*, 292 Conn. 696, 731–32, 975 A.2d 636 (2009).

"Our jurisprudence has recognized that those seeking equitable redress in our courts must come with clean hands. The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . For a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied . . . for the advancement of right and justice. . . . The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Citation omitted; internal quotation marks omitted.) *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 334–35, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002).

"[T]raditional mortgage foreclosure standards . . . permit the assertion of certain special defenses, including that of equitable estoppel. . . . The doctrine of equitable estoppel is well established. [W]here one, by his words or actions, intentionally causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief, so as injuriously to affect his previous position, he is [precluded] from averring a different state of things as existing at the time. . . . Our Supreme Court . . . stated, in the context of an equitable estoppel claim, that [t]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. . . . Broadly speaking, the essential elements of an equitable estoppel . . . as related to the party to be estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and incon-

sistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts.” (Citation omitted; footnote omitted; internal quotation marks omitted.) *T.D. Bank, N.A.* v. *M.J. Holdings, LLC*, supra, 143 Conn. App. 337–38.

Viewed broadly and realistically, the allegations set forth in the special defense at issue implicate the equitable defenses on which the defendants rely. Although the defendants did not explicitly characterize their special defense in terms of fraud, unconscionability, unclean hands, or equitable estoppel, their failure to do so is not dispositive in our analysis. The allegations, read broadly and realistically, set forth a general theory that the facts known to the original plaintiff concerning the financial situation of David Aubut were such that, at the time that the parties entered into the subject loan, the original plaintiff knew or should have known that the loan would fail. Stated otherwise, the defendants assert that because the facts were such that the original plaintiff offered David Aubut a loan that it knew or should have known was “destined to fail from [its] inception,” the substitute plaintiff should not be permitted to enforce the subject note and mortgage. Thus, the allegations fairly put the substitute plaintiff on notice that, on equitable grounds, the defendants intended to challenge the making of the note, mortgage, or both. As we have explained previously, a special defense of such nature is legally valid.

Having concluded that the defendants set forth a legally viable special defense, we also conclude that the defendants, in opposing summary judgment, demonstrated the existence of a genuine issue of material fact with respect to the special defense. The court had before it the note, the mortgage deed, and other records concerning the defendants’ payment history. Among the materials submitted in their opposition to summary judgment, the defendants provided the court with an affidavit of David Aubut, consisting of thirty-two numbered paragraphs, in which he made factual averments concerning the making of the loan as well as his financial situation at the time of the making of the loan. These averments supported the allegations made in his special defense. Additionally, David Aubut averred: “We struggled from the first payment until the last payment we were able to make on this loan. Eventually we just could not afford it any longer.” Also, he averred: “We were told by the lender’s representative that the loan was affordable based on our household income and expenses. I believed the lender’s representative had my best interest in mind but now know better.” The substitute plaintiff did not make any attempt to counter these allegations by way of affidavit or other documentary evidence.

By means of David Aubut's affidavit, as well as other evidence concerning the loan, mortgage, and payment history that was before the court, we conclude that the defendants amply demonstrated that a genuine issue of material fact existed with respect to their special defense that, on equitable grounds, challenged the making of the loan agreement at issue. The defendants presented proof of David Aubut's financial situation at the time of the origination of the loan, as well as proof that a representative of the substitute plaintiff had made statements with respect to the affordability of the loan, statements on which David Aubut had relied to his detriment. The proof presented concerning the loan and the conduct of the substitute plaintiff with respect to the loan was sufficient to give rise to a genuine issue of material fact with respect to whether the equitable defenses of fraud, unconscionability, unclean hands, and equitable estoppel applied. Because we conclude that the defendants' special defense implicated valid, equitable doctrines and that they demonstrated that a genuine issue of material fact existed with respect thereto, we conclude that the court erroneously rendered summary judgment in the substitute plaintiff's favor.

The judgment is reversed and the case is remanded with direction to deny the substitute plaintiff's motion for summary judgment only as to the defendants' special defense of predatory lending and for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] In this opinion, we shall refer to David Aubut and Karen Aubut collectively as the defendants, but we also shall refer to each of them by their respective names when it is necessary to refer to either of them individually.

[2] The substitute plaintiff also argues that the defendants' claim is improper because it was never raised in the pleadings, but was raised for the first time in their memorandum of law in opposition to summary judgment. The court implicitly agreed with this conclusion in its memorandum of decision, as it stated: "In their opposition to the [m]otion for [s]ummary [j]udgment, the defendants raise additional defenses . . . [including the substitute plaintiff's] failure to give proper notice of the acceleration of the note. The defendants have not pleaded these defenses in their special defenses. . . . [The substitute plaintiff] has presented evidence that it sent a notice of acceleration which complied with the terms of the loan documents."

To the extent that the substitute plaintiff argues that the court was barred from considering the defendants' claim as to the preacceleration notice of default because it was not raised in the pleadings and was raised for the first time at the summary judgment stage, we disagree. In order for the substitute plaintiff in the present case to establish its prima facie case for foreclosure of the defendants' mortgage, it had to prove "by a preponderance of the evidence that it [was] the owner of the note and mortgage, that the defendant mortgagor [had] defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, [had] been satisfied." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 392, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014).

[3] In the context of their special defense under CUTPA, the defendants relied on the allegations set forth in their predatory lending special defense and alleged, in relevant part: "Plaintiff's actions, conduct and trade practices alleged herein run afoul of General Statutes § 42-110a et seq., which makes it illegal for any person, which includes Plaintiff as a legal entity, from engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

"As a consequence, Plaintiff should not be allowed to enforce the subject note and mortgage."

In their predatory lending special defense, the defendants alleged as follows:

"[1] On or about September 29, 2009, Defendant, David Aubut, without the benefit of counsel, executed and delivered, in the presence of a notary public, to Bank of America, N.A., the former plaintiff that commenced the present action, a note and mortgage in the original principal amount of $189,957.

"[2] In April of 2009, Defendant, David Aubut, had suffered a major heart attack and had lost his job.

"[3] At that time of the subject loan, a refinance transaction, Defendant had been working at his place of employment for three months.

"[4] At the time of the subject loan, Defendant's income in the amount of $36,000 per annum was the sole source of income for the household.

"[5] At the time of the subject loan, Defendant's take-home pay was approximately $1950 per month.

"[6] At the time of the subject loan, Defendant owed approximately $45,000 in credit card debt.

"[7] At the time of the subject loan, Defendant owed approximately $132,000 on his existing mortgage.

"[8] The new loan provided to Defendant increased his mortgage balance from $132,000 to approximately $190,000.

"[9] Monthly payments on the new loan were approximately $1400 which represented more than 70 percent of Defendant's take-home pay.

"[10] The monthly mortgage payment of approximately $1400 left Defendant with approximately $550 to pay for his monthly necessary household and living expenses.

"[11] Of the loan proceeds, approximately $45,000 was used to pay credit card debt that could have been discharged in a Chapter 7 bankruptcy proceeding.

"[12] The plaintiff charged a loan discount fee in excess of $3000 for this loan and a lender closing fee of $750.

"[13] Additional fees to a company designated as Service Link, which was hired by Bank of America, totaled nearly $1500.

"[14] At the time of the subject loan Defendant had equity in the subject property that was protected by homestead exception and could have been protected in a Chapter 7 bankruptcy proceeding.

"[15] At the time of the subject loan, Defendant was insolvent within the definition of the United States Bankruptcy Code.

"[16] The loan is due for payment as of approximately September, 2011.

"[17] On or about May 21, 2012, Plaintiff instituted foreclosure proceedings against Defendant.

"[18] On or about June 5, [2012], Defendant filed a request for mediation.

"[19] Said request was granted by the Superior Court, Judicial District of Middlesex at Middletown, and on June 19, 2012, Defendant and Plaintiff entered into mediation.

"[20] On or about May 30, 2013, the mediation period was terminated by the Court without the Defendant being offered a loan modification.

"[21] On or about June 26, 2013, the Defendant filed Chapter 7 Bankruptcy.

"[22] On June 18, 2014, Nationstar Mortgage, LLC (Nationstar), was substituted as Plaintiff.

"[23] Nationstar is liable for all of the aforementioned actions of Bank of America, the original Plaintiff that commenced this action.

"[24] The Plaintiff, at the time this action was commenced, had offered Defendant a mortgage on his principal residence that it knew or should have known Defendant could not afford.

"[25] The Plaintiff at the time this action was commenced either knew or should have known that at the time this loan was made Defendant was insolvent.

"[26] The subject loan was predatory in nature and destined to fail from inception.

"[27] As a consequence, Plaintiff should be barred from enforcing the subject note and mortgage."

[4] The defendants also set forth a three count counterclaim sounding in "predatory lending," "violation of CUTPA," and "breach of covenant of good faith." The defendants have not raised a claim of error related to the court's rendering of summary judgment in favor of the substitute plaintiff on their counterclaim.

[5] Although in their opposition to summary judgment the defendants argued that "a high level, fiduciary relationship" existed between the substitute plaintiff and the original plaintiff, this type of relationship is at odds with an agency relationship. Moreover, the defendants did not present proof to demonstrate that the substitute plaintiff was the original plaintiff's agent,

or that it otherwise had assumed its liabilities.

———————————————