******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# U.S. BANK TRUST, NATIONAL ASSOCIATION *v.*
# GEORGE KENNETH SHUEY ET AL.
## (AC 46985)

Alvord, Westbrook and Bear, Js

*Syllabus*

The defendants appealed from the trial court's judgment of foreclosure by sale rendered for the plaintiff. They claimed, inter alia, that the court improperly dismissed their counterclaim for lack of standing because, contrary to the conclusion reached by the court, they were not required to identify the counterclaim as an asset on a bankruptcy petition they had filed prior to the foreclosure proceeding. *Held*:

The trial court properly considered the defendants' special defense of unclean hands and determined that the defendants had not sustained their burden of producing evidence that supported that defense and created a genuine issue of material fact, there having been no basis in the record for the defendants' claim that the court determined that their defense had been pleaded insufficiently.

The trial court properly rendered summary judgment for the plaintiff, as the defendants did not meet their burden of providing an evidentiary basis to establish the existence of a genuine issue of material fact as to their unclean hands special defense.

The trial court properly determined that the counts of the defendants' counterclaim, sounding in a violation of the Connecticut Unfair Trade Practices Act (§ 42-110a et seq.), negligence, and misrepresentation and fraud, existed as recognized causes of action at the time the defendants filed their bankruptcy petition, and all counts of the counterclaim had accrued prior to the filing of their bankruptcy petition and, thus, remained property of the bankruptcy estate.

The trial court properly dismissed the defendants' counterclaim because the defendants were required to schedule the counterclaim as an asset when they filed their bankruptcy petition and their failure to do so deprived them of standing to assert the counterclaim in the foreclosure proceeding.

Argued October 9, 2024—officially released May 20, 2025

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the defendants, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the defendants filed a counterclaim;

thereafter, the court, *Cirello, J.*, granted the plaintiff's motion for summary judgment with respect to liability only; subsequently, the court, *Spader, J.*, granted the plaintiff's motion to dismiss the defendants' counterclaim and rendered a judgment of foreclosure by sale, from which the defendants appealed to this court. *Affirmed.*

*Ridgely Whitmore Brown*, for the appellants (defendants).

*Christa A. Menge*, for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendants, George Kenneth Shuey and Mary J. Shuey, appeal from the judgment of foreclosure by sale rendered in favor of the substitute plaintiff, U.S. Bank Trust, National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust. On appeal, the defendants claim that the court (1) improperly rendered summary judgment as to liability in favor of the plaintiff[1] on the basis that the defendants failed to establish a genuine issue of material fact as to their special defense of unclean hands and, thereafter, (2) improperly dismissed their counterclaim for lack of standing because, contrary to the conclusion reached by the court, they were not

[1] The original plaintiff, Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, as Trustee for Normandy Mortgage Loan Trust, Series 2015-1 (Wilmington), commenced this foreclosure action and filed the motion for summary judgment as to liability only. Wilmington thereafter assigned the mortgage to Normandy Mortgage Acquisition, which then assigned it to MTGLQ Investors, LP, which then assigned it to the substitute plaintiff. On December 13, 2021, the court granted the plaintiff's motion to substitute U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust, as plaintiff. In doing so, the court specified that its "order shall in no way affect prior pleadings." For ease of discussion, we will refer to U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust, as the plaintiff throughout this opinion unless otherwise noted.

required to identify their counterclaim as an asset on a bankruptcy petition they filed in 2012. We affirm the judgment and remand this case for the purpose of setting a new sale date.[2]

The record reveals the following facts and procedural history. On or about May 2, 2010, the defendants defaulted on a note they had executed in January, 2002, in favor of World Savings Bank, FSB, for the principal

---

[2] In their preliminary statement of issues on appeal, the defendants list seven issues, including that the court, *Cirello, J.*, improperly denied their September 2, 2021 motion to dismiss the complaint because, they claim, the plaintiff failed to comply with the "Connecticut Emergency Mortgage Assistance Program (EMAP) notice requirements" and thus failed to satisfy a mandatory condition precedent to the bringing of this foreclosure action. See, e.g., *KeyBank, N.A.* v. *Yazar*, 347 Conn. 381, 386, 297 A.3d 968 (2023). The "Statement of Issues" set forth in the defendants' appellate brief, however, identifies only two issues: (1) whether "the court's grant of summary judgment . . . [was] clearly erroneous" and (2) whether "the court err[ed] in dismissing the [defendants'] counterclaim." Even so, the last subsection of the argument the defendants advance in support of their challenge to the dismissal of their counterclaim is captioned: "The note and the mortgage both require notice by first class mail as a condition precedent to filing the foreclosure action." The defendants posit in that subsection that the plaintiff's mailing, which was sent "by certified mail return receipt requested" and which they claim not to have received, was not sufficient for notice purposes. Consequently, they aver that, "[e]ven though this [issue] is not technically jurisdictional . . . the plaintiff failed to give proper notice and . . . the action should be dismissed." They further aver, in the conclusion to their brief, that the judgment "in favor of the plaintiff and counterclaim defendant should be reversed and the case remanded with instructions to restore the case to the docket *or dismiss it for violating the proper notice condition precedent*." (Emphasis added.) Apart from these vague, conclusory assertions, however, the defendants have not identified expressly any error by the trial court in its assessment of the plaintiff's compliance with the notice requirements, nor have they explained how any such error should entitle them to the relief they are seeking on appeal. To the extent that the defendants have attempted to do so as part of their argument that the court should not have dismissed their counterclaim, their briefing is wholly inadequate, and we deem any such claim abandoned. See *Bank of New York Mellon* v. *Mangiafico*, 198 Conn. App. 722, 723 n.3, 234 A.3d 1115 (2020) ("We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.)).

amount of $241,000. The note was secured by a mortgage on real property located at 300 Mungertown Road in Madison (property), which the defendants owned. In August, 2010, one of the plaintiff's predecessors in interest initiated a foreclosure action against the defendants.[3]

On April 18, 2012, while that foreclosure action was pending, the defendants jointly filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the District of Connecticut, thereby invoking the stay provisions of 11 U.S.C. § 362 (a) (1) (2012).[4] The defendants identified their interests in the property on the Schedule A form they filed in support of their petition. They also indicated on the Schedule D form they filed that "Wells Fargo Bank" and "Bank of America" were creditors with claims secured by the property, by way of first and second mortgages, but they did not indicate that those claims were in any way disputed. Moreover, on the Schedule B form they filed, on which they were required to itemize their personal property, they checked "none" where asked to describe and estimate the value of "[o]ther contingent and unliquidated claims of every nature, including . . . *counterclaims of the debtor*[s], and rights to setoff claims." (Emphasis added.) The Bankruptcy Court issued an order of discharge on July 18, 2012, and the bankruptcy case was closed on August 10, 2012. The prior foreclosure action

---

[3] *Wells Fargo Bank, N.A.* v. *Shuey*, Superior Court, judicial district of New Haven, Docket No. CV-10-6013622-S.

[4] Title 11 of the United States Code, § 362 (a), provides in relevant part: "[A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—

"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ."

ultimately was dismissed thereafter on December 12, 2014.[5]

The present foreclosure action was commenced in August, 2015, by way of a one count foreclosure complaint. See footnote 1 of this opinion. On October 12, 2016, after participation in the foreclosure mediation program terminated, the defendants filed an answer, special defenses, and a three count counterclaim. The defendants asserted two special defenses: (1) laches, predicated on the allegation that the plaintiff had not "properly and diligently prosecuted this foreclosure action" and (2) unclean hands, predicated on allegations that the defendants entered into a mortgage modification agreement in 2009 with "the plaintiff's predecessor in interest Wachovia," which "the plaintiff" then breached; the loan in question was "predatory"; and the "plaintiff has not properly and diligently prosecuted this case."[6] In their counterclaim, the defendants asserted the following three counts: (1) violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., (2) negligence, and (3) misrepresentation and fraud. As relief, the defendants sought, inter alia, "compensatory damages," "common-law practice damages," and "CUTPA compensatory double and treble damages."

On February 11, 2020, the plaintiff filed a motion for summary judgment as to liability only on its foreclosure complaint and as to all issues related to the defendants' counterclaim. In support of its motion, the plaintiff filed a memorandum of law, an affidavit of Kerry Walthall

---

[5] The parties agree in their briefs to this court that this dismissal was for "dormancy" and/or "failure to prosecute."

[6] When the defendants filed their special defenses on October 12, 2016, Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, as Trustee for Normandy Mortgage Loan Trust, Series 2015-1, was still the named plaintiff.

with appended exhibits,[7] and a copy of the mortgage and assignments. The plaintiff argued that it had established its prima facie case for foreclosure and that the defendants' special defenses raised no genuine issue of material fact relative to their liability on the note. The plaintiff further argued that the counts of the counterclaim were not "viable." As such, the plaintiff argued that it was entitled to judgment as a matter of law as to liability on its foreclosure complaint and as to the counterclaim.

More than two years later, on April 1, 2022, the defendants filed an objection to the plaintiff's motion for summary judgment,[8] a two page memorandum of law in support thereof, and an affidavit of the defendant George Kenneth Shuey.[9] The defendants asserted that "this case pended for years before it was ultimately dismissed for lack of due diligence," that "[t]here is . . . damage to credit and other such claims as described in *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656,

[7] Walthall was an employee of the loan servicer for the plaintiff's predecessor in interest, MTGLQ Investors, LP. See footnote 1 of this opinion. A "true and correct" copy of the note and a copy of the notice of default issued to the defendants were attached as exhibits to Walthall's affidavit.

[8] The record reflects that, before they filed their April 1, 2022 objection to the motion for summary judgment, the defendants filed four motions for extension of time to respond thereto, a motion to dismiss the complaint, and an objection to the court considering the plaintiff's motion for summary judgment before it addressed, among other things, their motion to dismiss the complaint. Moreover, the defendants acknowledge in their brief that "[t]he interruption of the COVID-19 pandemic . . . delayed the prosecution of the foreclosure action." See, e.g., *CT Freedom Alliance, LLC* v. *Dept. of Education*, 346 Conn. 1, 5–6, 287 A.3d 557 (2023) (Governor Ned Lamont issued, on March 10, 2020, declaration of public health and civil preparedness emergencies due to COVID-19 which was renewed multiple times).

[9] In his affidavit, George Kenneth Shuey averred, inter alia, that the "loan has been in default since May 1, 2010," that, "[s]ince the date of default, interest has accrued at various rates," and that, on the basis of "[a] blended approximate rate of 6 [percent]," interest in the amount of $173,520 accrued "during delays caused by the plaintiff's lack of diligence." He further averred that he and the codefendant, Mary J. Shuey, "have both suffered damage to [their] credit."

[212 A.3d 226] (2019)," and that "[t]here are disputes as of record and this case does not meet the criteria for summary judgment because these facts are in dispute . . . ."

On April 4, 2022, the court, *Cirello, J.*, held a hearing on the plaintiff's motion for summary judgment. During the hearing, the court asked the defendants' counsel to "summarize why there is a genuine issue of material fact here," and counsel stated, in reply, that "[t]here was a prior suit that was filed and never pursued. It was dismissed for lack of diligence in prosecution. It pended for a long period of time. And then it was dismissed. They waited to refile. And . . . some of this is due to the pandemic, but it's still ultimately going to be a question of fact as to who bears the burden of delay.

"Under [*U.S. Bank National Assn.* v.] *Blowers*, [supra, 332 Conn. 656], I filed a special defense that alleges the delay and the dismissal for lack of due diligence. And we have years and years of interest . . . ."

The court interjected by stating that "any motion for summary judgment that's filed in foreclosure court is based on liability. And you are making arguments that there may be a . . . defense with regard to the amount that's due." After the defendants' counsel explained, in response to the court's observation, that his "clients' credit and money out of pocket for my fees and interest are very substantial amounts of money," and referred to cases that "resulted in interest adjustments," the court reiterated that "we're getting back to the amount of money that's owed, and not the underlying liability on the debt." The following colloquy then ensued:

"[The Defendants' Counsel]: I don't think it should be postured that way, Your Honor. It's not the amount that's owed because it's not just an offset. It's damages. My clients have been damaged by having to pay me. And . . . it's . . . the offset to the debt is that would

just reduce the debt. The liability on that, equitable or under *Blowers* is liability. It's a counter liability. It's a question of fact for the ultimate fact finder.

"The Court: So because they weren't diligent in pursuing their claim, you are claiming that . . . your client is no longer liable for the debt? Is that what you're saying?

"[The Defendants' Counsel]: That would be to take my argument to the extreme. . . . [T]his case for years and years [was] . . . just sitting there and [was] dismissed . . . for failure to prosecute [which is] tantamount to unclean hands. . . .

"Judges certainly have the discretion to do an offset on the debt so you wind up with the same debt owed . . . and just an offset as you postured. But . . . the courts could find that my clients' house has been under water for quite some time and that this case pending against them precluded [the] possibility of . . . other credit, refinancing, any of the things that people commonly do.

"The Court: Well, we're . . . not here for purposes of speculation as to what genuine issues of material fact might be out there. It's your burden to show—well, it's the plaintiff's burden to show that there's no genuine issue of material fact. But in your objection . . . you cite some case law but you are not outlining . . . what those genuine issues of material fact are that you just speculated about a moment ago."

After hearing from the plaintiff's counsel, the court again asked the defendants' counsel, during his rebuttal argument, to "outline the exact facts that you believe that are in dispute because you don't . . . do it [in your memorandum in support of your objection]." The defendants' counsel stated, in response, that "[o]ne of the fact[s] that counters their arguments on liability is

the fact that we have a *Blowers* situation here.[10] . . . How much . . . my fees are. Should . . . there be sanctions? Should there be a finding of unclean hands? All . . . those are the related interest computations.''

Following the hearing, the court granted the plaintiff's motion for summary judgment with respect to liability only and denied it as to the defendants' counterclaim. In its April 4, 2022 order, after acknowledging that it was required ''to 'view the evidence in the light most favorable to the nonmoving party,' '' the court noted that ''[t]his does not mean . . . that the nonmoving party can prevail simply by invoking the mantra 'genuine issue of material fact' over and over . . . . '' It then stated that the plaintiff ''has shown that there are no genuine issues of material fact as to the defendants' . . . liability.

''The defendants' objection to the motion . . . is merely a recitation of law and conclusions of fact. The court fails to find that the defendants raised any specific facts that are in dispute regarding the defendants' liability to [the plaintiff].'' With respect to the counts of the counterclaim, the court explained that the claims of a ''[v]iolation of [CUTPA]; negligence, and misrepresentation and fraud . . . are fact intensive and cannot be determined as a matter of law.''

Thereafter, this matter was scheduled for a court trial, to take place on April 6, 2023. While the plaintiff's

---

[10] In *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 675, our Supreme Court determined that ''allegations that the mortgagee has engaged in conduct that wrongly and substantially increased the mortgagor's overall indebtedness, caused the mortgagor to incur costs that impeded the mortgagor from curing the default, or reneged upon modifications are the types of misconduct that are 'directly and inseparably connected' . . . to enforcement of the note and mortgage,'' and that ''[s]uch allegations, therefore, provide a legally sufficient basis for special defenses in [a] foreclosure action,'' even though such conduct occurred after the origination of the loan. Id., 676. Notably, despite their many references during the trial court proceedings to *Blowers*, the defendants have not cited to *Blowers* in their brief to this court.

counsel was preparing for trial, she became aware of the defendants' 2012 bankruptcy action and learned that the defendants had not scheduled their counterclaim, or claimed any rights to offset claims, on their bankruptcy petition. On March 3, 2023, following that discovery, the plaintiff filed a motion to dismiss the defendants' counterclaim for lack of subject matter jurisdiction, a memorandum of law in support of that motion and supporting exhibits. The plaintiff argued in support of that motion that, because the defendants had not scheduled their counterclaim in their bankruptcy filings, the claims belonged to the bankruptcy estate, and the defendants did not have standing to pursue them. The plaintiff also argued, in the alternative, that the counterclaim was barred by judicial estoppel and the relevant statutes of limitations.

The defendants filed an objection to the motion to dismiss and a supporting memorandum of law on April 21, 2023. They argued that they were not required to schedule their counterclaim when they filed for bankruptcy in 2012 because (1) "Connecticut had not recognized 'predatory lending' as a defense or affirmative counterclaim and, therefore, any such claim was not a recognized cause of action that would qualify as 'property' " they had to disclose; (2) even if the counts of their counterclaim were recognized as causes of action in 2012, the counterclaim was not their "property" at that time because their interests therein had not yet accrued; and (3) it would have run counter to the policies underlying the United States Bankruptcy Code to consider their counterclaim to be property they had to disclose.

The plaintiff filed a reply to the defendants' objection and, following a hearing, the trial court, *Spader, J.*, granted the plaintiff's motion and issued an order on May 16, 2023, dismissing the defendants' counterclaim for lack of standing. In doing so, the court concluded

that the defendants' counterclaim should have been scheduled as part of their bankruptcy petition and that, because it was not, the counterclaim was an asset of the defendants' bankruptcy estate and the defendants did not have standing to pursue it. Further, the court rejected the defendants' counter arguments, determining, instead, that the defendants had alleged "CUTPA, negligence and misrepresentation/fraud [as counts of their counterclaim]—not 'predatory lending,' " that causes of action generally accrue at the time the conduct giving rise to the claim occurs, and that requiring the defendants to litigate their counterclaim during an adversarial bankruptcy proceeding was consistent with policy.

Thereafter, on September 18, 2023, the trial court, *Spader, J.*, rendered a judgment of foreclosure by sale in favor of the plaintiff and set a sale date of January 13, 2024.[11] This appeal followed. Additional facts will be set forth as necessary.

I

The defendants first claim that the court improperly rendered summary judgment against them as to liability on the foreclosure complaint because their "special defense of unclean hands based on failure to prosecute a foreclosure with diligence is a recognized defense to foreclosure, and [they] presented uncontroverted evidence to the court that the plaintiff had failed to prosecute a previous foreclosure action based on the same

---

[11] The plaintiff had filed a motion for judgment of strict foreclosure on September 1, 2023. At the September 18, 2023 hearing on the motion, however, the court determined, and the plaintiff's counsel agreed, that there was sufficient equity in the property for a sale. As such, the court rendered a judgment of foreclosure by sale and set a January 13, 2024 sale date. Neither party disputes the form of the judgment.

alleged default for nearly five years until it was dismissed for dormancy, resulting in the accrual of approximately $172,000 in interest on the debt during that period."[12] We are not persuaded.

We begin by setting forth the relevant standard of review and legal principles that guide our analysis. "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . A material fact is one that makes a difference in the outcome of a case. . . .

"Summary judgment shall be granted if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"[T]o establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure . . . have been satisfied. . . . Thus, a

---

[12] As stated previously in this opinion, the defendants asserted two special defenses, laches and unclean hands, both of which were predicated, at least in part, on the plaintiff's alleged failure to diligently prosecute its claim for foreclosure. We note, however, that, apart from making two passing references to "laches" in challenging the court's decision to grant summary judgment as to their liability, they focus exclusively on "unclean hands." We therefore deem any claim the defendants may have had regarding the court's treatment of their laches special defense abandoned as a result of the defendants' inadequate briefing. See *Bank of New York Mellon* v. *Mangiafico*, 198 Conn. App. 722, 723 n.3, 234 A.3d 1115 (2020).

court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense. . . .

"[T]he party raising a special defense has the burden of proving the facts alleged therein. . . . If the plaintiff in a foreclosure action has shown that it is entitled to foreclose, then the burden is on the defendant to produce evidence supporting its special defenses in order to create a genuine issue of material fact . . . . Legally sufficient special defenses alone do not meet the defendant's burden. The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . Further . . . [t]he applicable rule regarding the material facts to be considered on a motion for summary judgment is that the facts at issue are those alleged in the pleadings. . . . [B]ecause any valid special defense raised by the defendant ultimately would prevent the court from rendering judgment for the plaintiff, a motion for summary judgment should be denied when any [special] defense presents significant fact issues that should be tried. . . .

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the [plaintiff] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Bretoux*, 225 Conn. App. 455, 462–63, 317 A.3d 152 (2024).

A

The first argument the defendants make in support of their claim that the court improperly granted the plaintiff's motion for summary judgment is that they "sufficiently plead[ed] a special defense for . . . unclean hands on the basis of the failure to prosecute with diligence" and that, "[t]o the extent that [the court's decision to grant summary judgment] may have been based on a determination that the defendants had not sufficiently plead[ed] a defense of unclean hands . . . that decision was clearly erroneous." Our plenary review of the court's order granting the motion for summary judgment, however, reveals that the court properly considered the defendants' special defense of unclean hands; see, e.g., *Homebridge Financial Services, Inc.* v. *Jakubiec*, 223 Conn. App. 517, 539, 309 A.3d 1223 ("[b]ecause an action to foreclose a mortgage is an equitable proceeding, the doctrine of unclean hands may be applicable" (internal quotation marks omitted)), cert. denied, 349 Conn. 909, 314 A.3d 602 (2024); and rejected it because the defendants had not sustained their burden of producing evidence that supported that defense and created a genuine issue of material fact. See *Deutsche Bank National Trust Co.* v. *Bretoux*, supra, 225 Conn. App. 462–63; see also *Iadanza* v. *Toor*, 226 Conn. App. 736, 749, 320 A.3d 979 (interpretation of trial court judgment is question of law), cert. denied, 350 Conn. 908, 323 A.3d 1092 (2024).

Indeed, the court stated that the plaintiff had "shown that there are no genuine issues of material fact as to the defendants' . . . liability" and that it did not "find that the defendant[s] raised any specific facts that are in dispute, regarding [their] liability to [the plaintiff]." The court had made repeated attempts during the oral argument regarding the motion for summary judgment to have the defendants' counsel "summarize why there is a genuine issue of material fact here" and to "outline

the exact facts that you believe that are in dispute" and, ultimately, stated in its order that the party opposing summary judgment cannot "prevail simply by invoking the mantra 'genuine issue of material fact' over and over . . . ." There is simply no basis in the record to conclude that the court granted summary judgment because it determined that the defendants' unclean hands special defense was pleaded insufficiently and, thus, the predicate for the defendants' first argument fails. See *Iadanza* v. *Toor*, supra, 749 ("to determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances" (internal quotation marks omitted)).

B

We turn next to the defendants' argument that they "presented sufficient evidence in George Kenneth Shuey's affidavit to establish a genuine issue of material fact with respect to the failure to prosecute diligently." We do not agree that the defendants established that a genuine issue of material fact existed with respect to their unclean hands special defense and, thus, we conclude that the court properly rendered summary judgment in favor of the plaintiff.

At the outset, we note that, in their appellate brief, the defendants take issue with the plaintiff for presenting "no affidavits to sustain its burden of proving that no genuine issue of material fact existed with respect to the special defenses." The defendants posit that they "submitted an affidavit showing that there were genuine issues of material fact with regard to the special defenses . . . [and that] [b]ecause [the] plaintiff did not otherwise submit affidavits showing that there was no genuine issue of material fact with regard to the special defenses to counter the [defendants' affidavit], the plaintiff failed to sustain its burden of showing that

there was no genuine issue of material fact with regard to the special defenses. Therefore, the trial court's granting of the plaintiff's motion for summary judgment was clearly erroneous and legally and logically incorrect." (Footnote omitted.)

The plaintiff, however, did not have to demonstrate that a genuine issue of material fact existed with respect to the defendants' special defense; the defendants did. See *Deutsche Bank National Trust Co.* v. *Bretoux*, supra, 225 Conn. App. 463. It was the plaintiff's burden to establish its prima facie case and to show that it was entitled to foreclose, and the defendants have not claimed on appeal that the plaintiff failed to do so. See id., 462–63. As such, it became *the defendants' burden* to produce evidence supporting their special defense in order to establish that a genuine issue of material fact existed with respect to the plaintiff's purported unclean hands, and we conclude that they failed to do so. See id., 463.

"It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice. . . . The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fairminded people, the doctrine of unclean hands does not apply. . . . The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the

matter in litigation. . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked. . . . Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Internal quotation marks omitted.) *Homebridge Financial Services, Inc.* v. *Jakubiec,* supra, 223 Conn. App. 539–40.

The only evidence the defendants submitted in support of their opposition to the plaintiff's motion for summary judgment was George Kenneth Shuey's affidavit, which the defendants claim "establish[ed] a genuine issue of material fact with respect to the failure to prosecute diligently" and, thus, their unclean hands special defense. The contents of that affidavit can be summarized as follows. The defendants defaulted on their loan on May 1, 2010, and interest has been accruing since then "at various rates." Since the default, two foreclosure actions have been instituted. The first foreclosure action "was ultimately dismissed by the court on December 12, 2014."[13] The second foreclosure action is the present action. On the basis of a "blended approximate [interest] rate of 6 percent," $173,520 in interest had accrued "during delays caused by the plaintiff's lack of diligence." Moreover, George Kenneth Shuey had paid nearly $22,000 in legal fees to defend the foreclosure actions, and he and Mary J. Shuey have "both

[13] We note that, although the parties appear to agree in their briefs to this court that the initial foreclosure action was dismissed for "dormancy" and/ or "failure to prosecute"; see footnote 5 of this opinion; George Kenneth Shuey's affidavit merely references the dismissal without a description as to the basis therefor.

suffered damage to [their] credit." Those bare allegations do not support an inference that the plaintiff engaged in wilful misconduct with the purpose of prejudicing the defendants' rights. Indeed, apart from averring that the plaintiff instituted two foreclosure actions based on the defendants' admitted default on their loan, those allegations do not aver that the plaintiff engaged in any conduct whatsoever.

Although George Kenneth Shuey averred that there were "delays caused by the plaintiff's lack of diligence," he provided no explanation as to what those delays were or to otherwise support that conclusory allegation. This is particularly significant given that the record reflects that there were delays in the plaintiff's pursuit of foreclosure, but that the majority of those delays, i.e., the automatic bankruptcy stay, the length of time it took the defendants to respond to the plaintiff's motion for summary judgment and delays attendant to the COVID-19 pandemic; see footnote 6 of this opinion; involved circumstances that were out of the plaintiff's control.

Moreover, the assertion regarding damage the defendants allegedly sustained to their credit is equally unsupported, and the blind reliance on an unexplained "blended approximate" rate of 6 percent, during unspecified periods of alleged delays, to calculate the amount of interest that purportedly accrued during those alleged delays is pure, unsubstantiated speculation. As such, the defendants' unsupported and speculative allegations are insufficient to raise a genuine issue of material fact. See, e.g., *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 793–94, 749 A.2d 1144 (2000) ("[a] conclusory assertion . . . does not constitute evidence sufficient to establish the existence of a disputed material fact for purposes of a motion for summary judgment"); see also *CitiMortgage, Inc.* v. *Coolbeth*, 147 Conn. App. 183, 194, 81 A.3d 1189 (2013) (affidavit

"rooted in surmise" is insufficient to raise genuine issue of material fact), cert. denied, 311 Conn. 925, 86 A.3d 469 (2014). Because the defendants did not meet their burden of providing an evidentiary basis to establish the existence of a genuine issue of material fact as to their unclean hands special defense, the court properly rendered summary judgment as to liability for the plaintiff.

## II

We now turn to the defendants' claim that the court, *Spader, J.*, improperly dismissed their counterclaim upon concluding that it remained an asset of the defendants' bankruptcy estate and that, consequently, the defendants lacked standing to pursue it. We disagree.

We begin by setting forth our standard of review and the general legal principles that are germane to our analysis. "The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Citation omitted; internal quotation marks omitted.) *Rubin* v. *Brodie*, 228 Conn. App. 617, 630–31, 325 A.3d 1096 (2024).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party

to request an adjudication of the issue . . . . Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, [the standard of] review is plenary." (Internal quotation marks omitted.) *U.S. Bank, National Assn.* v. *Madison*, 196 Conn. App. 267, 272, 229 A.3d 1104 (2020), appeal dismissed, 341 Conn. 809, 268 A.3d 64 (2022).

"In considering the standing issue raised in this case . . . we first are guided by certain fundamental principles of bankruptcy law. When a debtor files for bankruptcy protection, a bankruptcy estate is created. . . . Title 11 of the United States Code, § 541, prescribes the property interests of the debtor that comprise the bankruptcy estate. Subject to a few exceptions, such property is defined as 'all legal or equitable interests of the debtor in property *as of the commencement of the case.*' . . . 11 U.S.C. § 541 (a) (1) (2012). It is well settled that such property includes causes of action possessed by the debtor at that time. . . . A bankruptcy debtor does not have standing to pursue claims that constitute property of a bankruptcy estate." (Citations omitted; emphasis in original; footnote omitted.) *Weiss* v. *Smulders*, 313 Conn. 227, 239–40, 96 A.3d 1175 (2014).

"As noted by our Supreme Court, the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all their assets. The courts will not permit a debtor to obtain relief from the [B]ankruptcy [C]ourt by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. . . .

"The act of filing a bankruptcy petition transfers a debtor's assets to the bankruptcy estate, and these assets remain assets of the bankruptcy estate unless returned to the debtor by the operation of law. . . . [I]t is a basic tenet of bankruptcy law . . . that all

assets of the debtor, *including all* [*prepetition*] *causes of action belonging to the debtor*, are assets of the bankruptcy estate that must be scheduled for the benefit of creditors . . . . [A]n asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554 (c).[14] . . .

"[W]here a debtor fails to list a claim as an asset on a bankruptcy petition, the debtor is without legal capacity to pursue the claim on his or her own behalf [postdischarge]. . . . This is so regardless of whether the failure to schedule causes of action is innocent." (Citation omitted; emphasis in original; footnote in original; internal quotation marks omitted.) *U.S. Bank, National Assn* v. *Madison*, supra, 196 Conn. App. 272–73.

There is no dispute in the present case that the defendants did not list their counterclaim as an asset on their bankruptcy petition. Rather, the defendants dispute the propriety of their having to do so, either because the counts of their counterclaim purportedly were not legally cognizable causes of action in 2012, or because they had not yet accrued by 2012. Specifically, they argue, as they did in the trial court, that, when they filed their petition, "predatory lending" was not recognized as "a defense or affirmative counterclaim and therefore, any such CUTPA claim based on predatory lending was not a recognized cause of action that would qualify as 'property' " under the bankruptcy code. They

[14] "Title 11 of the 2012 edition of the United States Code, § 554 (c), provides: 'Unless the court orders otherwise, any property scheduled under section 521 (a) (1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.'

"Title 11 of the 2012 edition of the United States Code, § 521 (a), provides in relevant part: 'The debtor shall— (1) file— (A) a list of creditors; and (B) unless the court orders otherwise— a schedule of assets and liabilities . . . .' " *U.S. Bank, National Assn* v. *Madison*, supra, 196 Conn. App. 273 n.6.

further argue that a requirement to schedule an unrecognized cause of action runs afoul of the "fresh start" policy underlying the bankruptcy code and would "potentially embroil the Bankruptcy Court in costly, time consuming adversary proceedings that would further delay the distribution of the estate and the debtor's fresh start."[15] Finally, they argue that, even if the counts of their counterclaim were recognized as causes of action in 2012 when they initiated their bankruptcy action, they did not constitute their "property" at that time because their claims had not yet accrued.[16]

The plaintiff argues, in response, that the defendants' failure to identify their counterclaim as an asset when they filed for bankruptcy deprives them of standing to pursue it. We agree with the plaintiff.

### A

With respect to the defendants' argument that their "counterclaim counts sound in a claim for predatory lending and therefore assert a cause of action that simply did not exist in 2012" when they filed their petition for bankruptcy, they posit that "Connecticut first recognized a *defense* of 'predatory lending' in *Bank of America, N. A.* v. *Aubut*, 167 Conn. App. 347, 381–82,

---

[15] More specifically, they posit that, "[i]n this case, the counterclaim plaintiffs' cause of action was not recognized by the state when the bankruptcy petition was filed. If they had scheduled the cause of action and the bankruptcy trustee chose to pursue it in an adversary proceeding, the Bankruptcy Court would have been required to apply Connecticut law. Because Connecticut had not recognized the defense or affirmative cause of action for predatory lending, the Bankruptcy Court would not have been able to adjudicate that claim. The only real practical effect of such an ancillary proceeding would be to add to the costs and delay of the discharge of the bankruptcy estate."

[16] The defendants also argue in their brief to this court that their counterclaim was not barred by the doctrine of judicial estoppel and that the plaintiff-counterclaim defendant's argument that the counterclaim was barred by statutes of limitations was improper. The trial court did not dismiss the defendants' counterclaim for either of these reasons, however, and, thus, we do not address these arguments.

143 A.3d 638 (2016),[17] four years after [they] had filed their bankruptcy petition" and that, consequently, they "did not have at [the] time [they filed their bankruptcy petition] 'a legally cognizable interest in the cause of action . . . under the applicable state law' " to list or schedule. (Emphasis in original; footnote added.) Moreover, they argue that, had they scheduled an unrecognized claim, the Bankruptcy Court ultimately "would not have been able to adjudicate" it and, thus, "[t]he only real effect [of their doing so] would be to add to the costs and delay of the discharge of the bankruptcy estate," which runs counter to the purposes of the bankruptcy code.

To this end, the defendants take issue with the court's conclusion that "the [counterclaim counts] are CUTPA, negligence and misrepresentation/fraud—not 'predatory lending' " and they focus on the court's treatment of "the CUTPA claim" in particular. "The interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Asnat Realty, LLC* v. *United Illuminating Co.*, 204 Conn. App. 313, 322, 253 A.3d 56, cert. denied, 337 Conn. 906, 252 A.3d 366 (2021).

We begin by noting that, although the defendants posit that the "court's description of the CUTPA claim mischaracterizes the counterclaim," they expressly acknowledge that their claim "*is a CUTPA claim* based on 'predatory lending' as a necessary element of the first prong of the CUTPA action, i.e., a claim based on

---

[17] In *Bank of America* v. *Aubut*, supra, 167 Conn. App. 376–83, this court analyzed the equitable special defenses available in a foreclosure action. In doing so, this court did not expressly recognize a defense entitled "predatory lending" but, rather, determined that the factual underpinnings of the "predatory lending" defense the defendants alleged in that case fell within the legal ambit of the recognized equitable defenses of fraud, unclean hands, unconscionability, and equitable estoppel and was, therefore, viable.

'immoral, unscrupulous, oppressive' conduct." (Emphasis added.) In other words, they describe their CUTPA claim in a manner that is consistent with, and in fact supports, the court's interpretation thereof.

Indeed, the first count of the counterclaim bears the title "Connecticut Unfair Trade Practices" and it includes "allegations" which, according to the defendants, "constitute violations of [CUTPA] . . . on the part of . . . the [plaintiff] and its predecessor in title and assignors in that said actions . . . by the [plaintiff] were immoral, oppressive and unscrupulous . . . ." It makes reference to "fraudulent predatory real estate lending practices" by the plaintiff and alleges, among other things, that "it is plain that the practice of issuing a loan with reckless disregard of the risk of foreclosure was within at least the penumbra of some common-law, statutory, or other established concept of unfairness and, therefore, an unfair trade practice under [CUTPA]." It concludes by alleging that the alleged "unlawful, unfair, unscrupulous or fraudulent practices are a substantial factor in proximately causing . . . [the defendants] substantial damages" and seeks "double or treble damages and such other relief as may be afforded under CUTPA."

It is clear to us, on the basis of our plenary review of these allegations, that the first count of the defendants' counterclaim is a CUTPA claim, the basis for which includes alleged unfair or deceptive predatory lending practices by the plaintiff and/or its predecessors in interest, as the defendants acknowledge and as the court found. See, e.g., *Bank of America, N.A.* v. *Aubut,* supra, 167 Conn. App. 373 ("[t]he public policy underlying CUTPA is to encourage litigants to act as private attorneys general and to engage in bringing actions that have as their basis unfair or deceptive trade practices" (internal quotation marks omitted)); see also *Coppola*

*Construction Co.* v. *Hoffman Enterprises Ltd. Partner-ship*, 157 Conn. App. 139, 197, 117 A.3d 876 ("[t]o prevail on a CUTPA claim, the [counterclaim] plaintiffs must [plead and] prove that (1) the [counterclaim] defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce . . . and (2) each class member claiming entitlement to relief under CUTPA has suffered an ascertainable loss of money or property" (citation omitted; internal quotation marks omitted)), cert. denied, 318 Conn. 902, 122 A.3d 631 (2015), and cert. denied, 318 Conn. 902, 123 A.3d 882 (2015). Given that CUTPA was enacted originally in 1973; see Public Acts 1973, No. 73-615, § 1; the defendants asserted a recognized cause of action that existed in 2012 and could have been scheduled as part of their bankruptcy petition. Thus, we reject their argument to the contrary.[18]

B

Finally, the defendants contend that, even if the counts of their counterclaim were recognized as causes of action in 2012, the counterclaim was not their "property" at that time. Relying on *Butner* v. *United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979), in which the United States Supreme Court held that "[p]roperty interests are created and defined by state law," the defendants maintain that they did not acquire any interest in their counterclaim until that claim accrued, and that this "did not occur until the foreclosure judgment was entered" because they had not suffered any injury, or harm, until then. As such, the defendants maintain that their counterclaim accrued after the commencement of the bankruptcy case, and they have standing to pursue the postpetition claim. The

[18] In reaching this conclusion, we express no opinion as to whether a cause of action for "predatory lending" existed in Connecticut in 2012 and/or exists presently. We simply conclude that the defendants asserted a cause of action that was recognized in 2012.

plaintiff responds that the defendants' counterclaim accrued prepetition and thus, remains property of the bankruptcy estate by virtue of the defendants' failure to schedule it. We agree with the plaintiff.

In *Weiss* v. *Smulders*, supra, 313 Conn. 227, our Supreme Court addressed "whether a cause of action that was instituted postpetition constitutes the property of the debtor *at the time the bankruptcy case has commenced, namely, by the filing of the petition.*" (Emphasis in original.) Id., 240. In doing so, it explained that "[t]he federal courts are split on the proper approach to resolve this question. Some courts, relying on *Butner* v. *United States*, [supra] 440 U.S. 48 . . . have determined that applicable state law determines when a cause of action accrues and therefore consider that date in relation to the date on which the petition was filed. . . . These courts reason that [a]lthough federal bankruptcy law determines the outer boundary of what may constitute property of the estate, state law determines the nature of a debtor's interest in a given item. . . . Therefore, whereas federal law instructs us that [a cause of action] *may* constitute property of [the debtor's] estate, state law determines whether [the debtor's] interest in the cause of action is sufficient to confer on the estate a property right in the action. . . . The Second Circuit, whose decisions carry particularly persuasive weight in our resolution of issues of federal law . . . follows this approach. . . .

"Other courts, relying on *Segal* v. *Rochelle*, 382 U.S. 375, 86 S. Ct. 511, 15 L. Ed. 2d 428 (1966), deem the purposes of federal bankruptcy law controlling, namely, to secure for creditors everything of value the debtor may possess in alienable or leviable form when he files his petition, while leaving the debtor free after the petition date to accumulate new wealth in the future. . . . These courts consider whether, even if a cause of action

accrued postpetition under state law, that action none-theless was sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start that it should be regarded as property of the bankruptcy estate. . . . Under this approach, if the claim has sufficient roots in the prebankruptcy past but does not materially impair the bankrupt's ability to obtain the fresh start intended under bankruptcy law, the claim belongs exclusively to the estate." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) *Weiss* v. *Smulders*, supra, 313 Conn. 240–43.

In *Weiss*, our Supreme Court expressly declined to resolve this split of authority and determine which approach is correct because the claim presented in that case failed under both approaches.[19] Likewise, in the present case, under either approach, the defendants' claim that their interests in their counterclaim did not accrue until after they filed their petition for bank-ruptcy fails.

As previously stated, the first approach requires us to look to applicable state law. See id., 241. "A plaintiff acquires an interest in a cause of action at the time it accrues. If, as of the [p]etition [d[ate, the [counterclaim] had accrued under Connecticut law, [it] became prop-erty of the estate and the [t]rustee, standing 'in the shoes' of the [d]ebtors, has standing to assert [it]. On the other hand, if the [counterclaim] did not accrue until after the petition was filed, it is property of the [d]ebtors, not the estate, and the [d]ebtors have stand-ing to pursue it." *In re de Hertogh*, 412 B.R. 24, 30 (Bankr. D. Conn. 2009). "In Connecticut, a cause of action accrues when a plaintiff suffers actionable

---

[19] We note that, in *Weiss*, it was the defendants' challenge to the plaintiff's standing to bring a promissory estoppel claim the defendants claimed belonged to the plaintiff's bankruptcy estate that failed. *Weiss* v. *Smulders*, supra, 313 Conn. 237–47.

harm. . . . Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." (Citation omitted.) *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 521, 562 A.2d 1100 (1989).

In the present case, the defendants allege, as support for each count of their counterclaim, that, prior to an "*October 2006*" merger between Golden West Financial Corporation, including its subsidiary World Savings Bank (Golden West) and the plaintiff's predecessor in interest, Wachovia Corporation, Golden West "engaged in a pattern of unlawful, unfair or fraudulent predatory real estate lending practices causing the counterclaimant and other victims of such behavior throughout the state of Connecticut, *to lose or be in jeopardy of losing* their homes through foreclosure." (Emphasis added.) They further allege to "have suffered substantial damages including but not limited to compensatory damages from payment of the terms of the predatory loan, foreclosure, payment of mortgage broker and other fees . . . emotional distress . . . and other monetary and special damages." They expressly attribute these alleged damages, in each count of their counterclaim, to "*Golden West*'s unlawful, unfair, unscrupulous or fraudulent practices." (Emphasis added.) Golden West, however, is alleged to have "ceased operations" following the October, 2006 merger. The defendants, therefore, have plainly alleged that they suffered actionable harm prior to October, 2006, well before they filed their bankruptcy petition on April 18, 2012. Accordingly, under the first approach, we conclude that the defendants' counterclaim accrued prepetition and, given that it was not scheduled, it remains property of the bankruptcy estate.

With respect to the second approach, courts that have employed it "have indicated that a cause of action does

not become property of the bankruptcy estate merely because it has *some* prepetition roots; rather, the facts forming the cause of action determine whether it is sufficiently rooted in the prepetition past. . . . Some courts have strictly construed the test to require that all or most of the facts constituting the cause of action exist at the commencement of the bankruptcy case . . . while other courts have applied the test expansively to include contingent and unripe claims as property of the estate." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Weiss* v. *Smulders*, supra, 313 Conn. 245–46. As stated previously, the defendants *expressly* have predicated their counterclaim on acts and omissions that preceded the commencement of their bankruptcy case by nearly six years. As such, under either construction of the second test, their counterclaim remains property of the bankruptcy estate.

For these reasons, we conclude that the defendants were required to schedule their counterclaim when they filed their bankruptcy petition and that their failure to do so deprives them of standing to pursue it now. As such, the court properly dismissed their counterclaim.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.