******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# SHERI SPEER *v.* NATIONSTAR MORTGAGE, LLC
## (AC 46630)

Elgo, Moll and Clark, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment granting the defendant's motion to dismiss her complaint for lack of subject matter jurisdiction. The plaintiff's complaint sought damages for the defendant's alleged actions undertaken in violation of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.). The plaintiff claimed, inter alia, that the court improperly concluded that she lacked standing to maintain her cause of action because she had commenced the action during the pendency of a bankruptcy proceeding and her claim became the property of the bankruptcy estate. *Held*:

The trial court improperly granted the defendant's motion to dismiss on the basis that the plaintiff lacked standing to maintain her action against the defendant, as most of the challenged conduct in support of the plaintiff's alleged violations of CUTPA occurred after the filing of the bankruptcy petition and was not sufficiently rooted in the prebankruptcy past, and, accordingly, the claim did not become property of the bankruptcy estate as a matter of law.

Argued November 21, 2024—officially released September 23, 2025

*Procedural History*

Action to recover damages for the defendant's alleged violations of the Connecticut Unfair Trade Practices Act, and for other relief, brought to the Superior Court in the judicial district of New London, where the defendant was defaulted for failure to plead; thereafter, the court, *Goodrow, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Sheri Speer*, self-represented, the appellant (plaintiff).

*Benjamin T. Staskiewicz*, with whom, on the brief, was *Geoffrey Milne*, for the appellee (defendant).

*Opinion*

ELGO, J. In this foreclosure and bankruptcy related action, the self-represented plaintiff, Sheri Speer, appeals from the judgment of the trial court granting the motion to dismiss her complaint in favor of the defendant, Nationstar Mortgage, LLC, doing business as Mr. Cooper, for lack of subject matter jurisdiction. The plaintiff contends that the court improperly concluded that she lacked standing to maintain the claim set forth in her complaint due to the fact that she commenced this action during the pendency of a bankruptcy proceeding. More specifically, the plaintiff argues that the court improperly concluded that her claim was the property of the bankruptcy estate and was not abandoned by the trustee.[1] We agree with the plaintiff that the court improperly dismissed her complaint. Accordingly, we reverse the judgment of the trial court and remand the case with direction to deny the defendant's motion to dismiss.

The following undisputed facts and procedural history are relevant to this appeal. The plaintiff obtained a mortgage on her home in Norwich (property). The defendant is a servicer of that mortgage, acting on behalf of the mortgage holder, Deutsche Bank, N.A., which commenced a foreclosure proceeding in 2010. In May, 2014, the plaintiff was subject to an involuntary bankruptcy petition and that petition listed the property

---

[1] Relatedly, the plaintiff argues that the trial court failed to make sufficient factual findings to support the granting of the motion to dismiss her complaint for lack of subject matter jurisdiction. Because we conclude that the plaintiff's cause of action was not the property of the bankruptcy estate—and that the trial court, therefore, improperly dismissed the complaint—we need not reach this issue. For the same reason, we need not reach the issue of whether the plaintiff's cause of action was abandoned by the bankruptcy estate, such cause of action not having been the property of the estate in the first instance.

and the mortgage on the schedules filed in that case.[2] In June, 2015, the bankruptcy trustee noticed an intention to abandon the property, and, after a hearing, filed a record of abandonment with the Bankruptcy Court. Only a few months after the filing on March 29, 2021, of the plaintiff's complaint in the present case, the bankruptcy trustee filed its final accounting on June 8, 2021. At all times relevant to this appeal, the plaintiff was self-represented in the various proceedings.

In her complaint, the plaintiff sought damages for alleged actions undertaken by the defendant in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[3] The complaint alleged that the defendant, "in order to profit and enrich itself to the detriment of the plaintiff and the mortgage holder . . . made routine charges and assessments" for various homeowners association and condominium association fees, despite the fact that the plaintiff's home is not subject to any fees levied by any such organization. The complaint further alleged that the defendant asserted charges for "maintenance" in 2020, "even though it never maintained or fixed the property in any way," as well as charges for inspections of the property "up to and during 2020." The complaint also set

[2] In our June 27, 2024 order on a motion for review filed by the plaintiff, this court took judicial notice of the bankruptcy proceedings in *In re Speer*, United States Bankruptcy Court, Docket No. 14-21007 (AMN) (D. Conn. June 24, 2015). Our review of the record of those proceedings indicates that the initial involuntary chapter 7 petition was filed on May 20, 2014. On January 5, 2015, the plaintiff converted the bankruptcy to a chapter 11 case, although it was later converted again to a chapter 7 case. The bankruptcy proceedings were lengthy and contentious. Ultimately, the trustee's final decree was issued, and the bankruptcy case was closed, on July 16, 2021.

[3] Paragraph three of the complaint states: "The plaintiff brings this action pursuant to [CUTPA] and the doctrine elucidated by the Connecticut Supreme Court in *Cenatiempo* v. *Bank of America*, *N.A.*, [333 Conn. 769] 219 A.3d 767 (2019)." For that reason, the trial court construed the plaintiff's complaint as one brought under CUTPA. In this appeal, neither party has raised any issue as to the propriety of that construction.

forth allegations that, "prior to initiation of foreclosure proceedings and up to the present," the defendant engaged in underhanded tactics during the plaintiff's attempt to seek loan modification through the federal Home Affordable Modification Program (HAMP), as well as violations of the defendant's obligations under the federal Real Estate Settlement Procedures Act (RESPA). The complaint also alleged that the defendant's conduct was wilful and "ongoing" and that the defendant "continues pushing forward with foreclosure and accruing legal fees, costs and expenses" despite its false representations that it "continues to work with the plaintiff to restructure her loan and get it out of foreclosure."[4] It concluded with an allegation that the plaintiff had "suffered actual and ascertainable losses as a consequence of this conduct, which has included an accumulation of interest, default fees, significant arrearages, attorney's fees, and a much higher monthly mortgage payment, lost borrower incentive payments under HAMP and emotional distress." The plaintiff sought damages under CUTPA, punitive damages, costs of suit, and "other relief the court deems appropriate."

The defendant filed its first motion to dismiss on July 6, 2021, contending that the prior pending action doctrine precluded the plaintiff's claims. In essence, the defendant argued that, because the plaintiff had challenged the accuracy of the affidavit of debt created by the defendant in the foreclosure action, she should not be allowed to pursue her claims arising out of the alleged CUTPA violations that stemmed from the same

---

[4] We note that the defendant was not the foreclosing party on the plaintiff's mortgage but was the mortgaging servicer. In a separate action, a judgment of foreclosure was rendered by the trial court on August 22, 2025. See *Deutsche Bank National Trust Co.* v. *Speer*, Superior Court, judicial district of New London, Docket No. CV-10-6004390-S (August 22, 2025). The plaintiff has filed an appeal of that judgment. See *Deutsche Bank National Trust Co.* v. *Speer*, Connecticut Appellate Court, Docket No. AC 49112 (appeal filed September 8, 2025).]

nucleus of facts. The court disagreed and denied the motion to dismiss. In so doing, the court noted that the defendant was not a party to the foreclosure action and that the plaintiff "brought this action under CUTPA. . . . [A] foreclosure action . . . is a separate [and] distinct cause of action from the consumer protection action contemplated by CUTPA."

The plaintiff filed three motions for default against the defendant, alleging a failure to plead. The plaintiff's third motion for default as to the defendant's liability was granted by the court in June, 2022.[5] The court denied the defendant's attempts to open the judgment and ordered the defendant to comply with discovery requests. The defendant filed a second motion to open the judgment of default in February, 2023.[6]

On the same day, the defendant filed a second motion to dismiss for lack of subject matter jurisdiction, this time premised on the bankruptcy status of the plaintiff when she filed her complaint against the defendant. By order dated May 8, 2023, the court granted the second motion to dismiss. In a subsequent order articulating the basis of that decision,[7] the court stated: "At the time the plaintiff filed this case, the plaintiff was in active chapter 7 bankruptcy . . . . [A]ll property of the [plaintiff], including prepetition causes of action of the

---

[5] The court denied the plaintiff's July 6, 2021 and May 2, 2022 motions for default for failure to plead.

[6] The court did not rule on the second motion to open.

[7] The court originally granted the defendant's motion to dismiss by order dated May 8, 2023, stating that it granted the motion "for the reasons articulated in the memorandum . . . filed by the defendant in support of the motion to dismiss." On June 6, 2023, the court issued a supplemental order to correct a scrivener's error in the May 8, 2023 order. On June 26, 2023, the plaintiff appealed from that order. She subsequently filed a notice of demand for decision, asserting that the trial court had not "provided a memorandum of decision as to the order dismissing the case . . . and its related orders . . . ." In response, the court issued an additional order on October 13, 2023, to clarify the basis of its decision to grant the motion to dismiss.

[plaintiff], became the property of the bankruptcy estate. The plaintiff has no standing to bring this action and the court lacks subject matter jurisdiction . . . ." From that judgment, the plaintiff timely appealed to this court.

During the pendency of this appeal, the plaintiff filed a motion for articulation with the trial court, which the court denied. The plaintiff then filed a motion for review of that denial with this court. We subsequently granted review and, in part, granted relief insofar as we ordered the trial court to articulate its factual findings and legal conclusions as to the claim that the bankruptcy trustee abandoned the property, and all claims related to it, prior to the filing of the complaint against the defendant.

The trial court issued its articulation of its factual findings and legal conclusions on January 17, 2024. The court found, inter alia, that the filing date of the involuntary bankruptcy petition was July 23, 2015,[8] and that

---

[8] We note that the finding that the petition was filed on July 23, 2015, is belied by the record of the Bankruptcy Court docket, which indicates an initial filing date in 2014. As discussed previously; see footnote 2 of this opinion; the original involuntary petition was filed on May 20, 2014. Our review of the bankruptcy docket reveals that the Bankruptcy Court granted a motion to convert the case from chapter 7 to chapter 11 on January 5, 2015. The Bankruptcy Court also granted a motion to convert the case from chapter 11 to chapter 7 on July 23, 2015—the same day as the hearing on the trustee's report of abandonment of the property. Title 11 of the United States Code, § 1112, provides the conditions under which a debtor may convert a case under chapter 11 to chapter 7. "Cause to convert a [c]hapter 11 bankruptcy case to [c]hapter 7 exists where reorganization seems unlikely or unrealistic based on the [d]ebtor's track record as debtor-in-possession and where the risk of delay falls entirely on the creditors." *In re Milford Connecticut Associates, L.P.*, 404 B.R. 699, 708 (Bankr. D. Conn. 2009). Likewise, 11 U.S.C. § 706 grants a debtor subject to an involuntary petition under chapter 7 the ability to convert the case to chapter 11. Pursuant to 11 U.S.C. § 348 (a), the conversion of a case from under one chapter of [t]itle 11 of the United States Code to another chapter "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348 (a) (2018); see *Headrick* v. *Bradley County Memorial Hospital*, 208 S.W.3d 395, 400 (Tenn. App. 2006) (in determining whether cause of action is part of bankruptcy estate, court looks to date of filing of original petition, not date when case was converted

the plaintiff had filed the present action on March 29, 2021.[9] Referencing the report of abandonment filed by the trustee, the court further found that the trustee abandoned the property on July 24, 2015.[10] The court determined that the claims raised in the present case "became the property of the bankruptcy estate at the time of the filing of the bankruptcy." The court stated that it had granted the motion to dismiss, concluding that it lacked subject matter jurisdiction because "the plaintiff was in active chapter 7 bankruptcy . . . . When [the plaintiff] filed the bankruptcy petition in her capacity as the bankruptcy debtor, all property of the debtor, including prepetition causes of action . . . became the property of the bankruptcy estate." The court recited that it had rejected the plaintiff's argument

to one under different chapter of title 11), appeal denied, Tennessee Supreme Court (August 21, 2006).

The defendant concedes that the plaintiff's complaint is based on events that occurred primarily in 2020. As such, any discrepancy regarding the court's determination of the effective filing date and the actual filing date as reflected in the bankruptcy file is of no moment for purposes of resolving the plaintiff's claim in this appeal. For that reason, we use the May 20, 2014 date as the filing date, which, as a matter of law, marks the point at which the bankruptcy estate was created.

[9] In its articulation, the court also found that "the bankruptcy petition was an involuntary petition." On appeal, neither party disputes that determination.

[10] Our review of the record of the bankruptcy proceeding indicates that, on June 19, 2015, the trustee of the plaintiff's bankruptcy estate gave notice of intent to abandon sixteen properties, including the property at issue in this case, pursuant to 11 U.S.C. § 554 (a). Both the trustee's affidavit (exhibit A) and the report of abandonment were attached to the plaintiff's memorandum of law in opposition to the motion to dismiss, dated March 9, 2023. Exhibit A, in support of the notice of intent to abandon, noted that Seaport Capital Partners, LLC, a creditor, had objected to the abandonment and made a "proposal for the purchase of the [plaintiff's] equity of redemption." Exhibit B noted that an objection to the proposed abandonment had been withdrawn "in part" and that the trustee was, in fact, abandoning the sixteen properties, including the property at issue here. A hearing on the matter was held before the Bankruptcy Court on July 23, 2015, and the report of abandonment of the property was filed with the Bankruptcy Court on July 24, 2015.

that the property reverted back to her upon the filing of the notice of intent to abandon because "at the time of the filing of the instant action, the bankruptcy case was still pending and the Bankruptcy Court had not approved the bankruptcy trustee's intention to abandon [the property]. The final accounting of the bankruptcy trustee was filed on June 8, 2021, after the filing of the instant action on March 29, 2021. Moreover, the notice of intent to abandon [the property] did not include abandonment of claims arising from [the property], such as the claims in the instant action."[11]

On appeal, the plaintiff claims that the court improperly concluded that she lacked standing to maintain the claim set forth in her complaint because it remained the property of the bankruptcy estate.[12] The plaintiff argues that the CUTPA claim was never the property of the bankruptcy estate.[13] The defendant argues that

[11] We note that the plaintiff argued, in her motion for review of the trial court's denial of her motion for articulation, that the trial court "merely assumes that the existence of a prior bankruptcy, regardless of how, why, or when claims came into existence, accrued or were addressed, must all be precluded because of the mere existence of the bankruptcy." We granted review of the trial court's denial of the motion for articulation but denied relief to the plaintiff.

[12] The plaintiff has set forth four issues in her principal appellate brief, but the first two can be distilled to the claim that the court erroneously determined that she lacked standing to pursue her CUTPA cause of action because it remained the property of the bankruptcy estate. The plaintiff also argues that the court erred in "not making any specific factual findings" including the date of her involuntary bankruptcy petition and when her cause of action accrued, as well as that the bankruptcy trustee abandoned the cause of action even if it were the property of the bankruptcy estate. As we explain in our analysis of the plaintiff's core claim, these issues are subsumed by the central question posed by the plaintiff and will be discussed as necessary.

[13] As explained in footnote 1 of this opinion, the plaintiff argues in the alternative that, if her cause of action were the property of the bankruptcy estate, it was abandoned when the trustee abandoned the property. The defendant counters that, even if the trustee did effectively abandon the property, the trustee did not abandon any causes of action "arising from" the property. Because we conclude that the plaintiff's cause of action was not the property of the bankruptcy estate, we need not address these arguments.

the court properly determined that the cause of action remains the unabandoned property of the bankruptcy estate because the plaintiff never scheduled the cause of action during the bankruptcy proceedings.

At the outset, we note that "[o]ur standard of review governing an appeal from a judgment granting a motion to dismiss on the ground of lack of subject matter jurisdiction concerns a question of law and is plenary." (Internal quotation marks omitted.) *State* v. *Saunders*, 132 Conn. App. 268, 270, 50 A.3d 321 (2011), cert. denied, 303 Conn. 924, 34 A.3d 394 (2012). The following relevant legal principles guide our analysis. "A motion to dismiss [for lack of standing] . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [A] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Citation omitted; internal quotation marks omitted.) *Emerick* v. *Glastonbury*, 145 Conn. App. 122, 127, 74 A.3d 512 (2013), cert. denied, 311 Conn. 901, 83 A.3d 348 (2014).

"When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which

are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 200–201, 994 A.2d 106 (2010). "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 770, 143 A.3d 578 (2016). Additionally, "[t]he plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised." *Emerick* v. *Glastonbury*, supra, 145 Conn. App. 128.

The following relevant principles of bankruptcy law are necessary to resolve this issue. Upon the filing of a bankruptcy petition, a bankruptcy estate is immediately created—this estate is comprised of statutorily-delineated property that is broadly and expansively defined at the commencement of the bankruptcy. See 11 U.S.C. § 541 (2018); Fed. R. Bankr. P. 1007. At this stage, "[t]he debtor must file a formal statement with the Bankruptcy Court including a schedule of his or her assets and liabilities. See 11 U.S.C. § 521 (a) (1) (B) (i). The assets, which become the property of the bankruptcy estate, include all causes of action belonging to the debtor that accrued prior to the filing of the bankruptcy petition. . . . A cause of action becomes a part of the bankruptcy estate even if the debtor fails to schedule the claim in his petition. . . . Property that is scheduled . . . but not administered by the plan, is abandoned to the debtor by operation of law at the close of the bankruptcy case. . . . By contrast, property that is not formally scheduled is not abandoned and therefore remains part of the estate. . . . Courts have held that because an unscheduled claim remains the property of the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy, and the claims must be dismissed." (Citations omitted; internal quotation marks omitted.) *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 165, 2 A.3d 873 (2010).

"Whether a cause of action belongs to a bankruptcy estate is a question of law . . . ." *Chartschlaa* v. *Nationwide Mutual Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008), cert. denied, 555 U.S. 1213, 129 S. Ct. 1534, 173 L. Ed. 2d 658 (2009). Once the bankruptcy estate has been created, "only the bankruptcy trustee has standing to pursue pre-petition causes of action." *Tyler* v. *DH Capital Management, Inc.*, 736 F.3d 455, 461 (6th Cir. 2013); see also *Seward* v. *Devine*, 888 F.2d 957, 963 (2d Cir. 1989) (prepetition causes of action belonging to debtor become part of bankruptcy estate at commencement of bankruptcy proceedings).

Moreover, "[b]ecause assets within the estate are those that exist 'as of the commencement of the case,' 11 U.S.C. § 541 (a), property acquired by the debtor *after* the filing of a bankruptcy petition generally does not become part of the estate."[14] (Emphasis in original.) *Chartschlaa* v. *Nationwide Mutual Ins. Co.*, supra, 538 F.3d 122. "However, '[a]fter-acquired' property will vest in the estate if it is derived from property that was part of the estate as of the commencement of the bankruptcy. See 11 U.S.C. § 541 (a) (6) (making '[p]roceeds, product[s], offspring, rents or profits of or from property of [the] estate' part of bankruptcy estate). Postpetition property will become property of the estate only if it is 'sufficiently rooted in the pre-bankruptcy past.' " *Chartschlaa* v. *Nationwide Mutual Ins. Co.*,

---

[14] Title 11 of the United States Code, § 541 (a) (7), provides that "[a]ny interest in property that the estate acquires after the commencement of the case" becomes a part of the estate. The estate, however, is a distinct legal entity and is not equivalent to the debtor who has sought the protections of bankruptcy. See *In re Doemling*, 127 B.R. 954, 956 (Bankr. W.D. Pa. 1991) ("[A]fter the commencement of the case, the estate has an existence that is completely separate from that of the debtor. Section 541 (a) (7) covers only property that the estate itself acquires after the commencement of the proceeding. Hence, there is absolutely no support for [the claim] that all the debtor's property, whether obtained pre- or post-petition, is property of the estate unless specifically excluded.").

supra, 122. But see *Stanley* v. *Sherwin-Williams Co.*, 156 B.R. 25, 26–27 (Bankr. W.D. Va. 1993) (claims sounding in breach of contract and arising out of postpetition events were unabandoned property of bankruptcy estate). As our Supreme Court has acknowledged, there is a split in federal authority as to what approach to use in determining whether certain causes of action that accrue postpetition are acquired by the estate or remain the property of the debtor. See *Weiss* v. *Smulders*, 313 Conn. 227, 240 n.8, 96 A.3d 1175 (2014). As explained by our Supreme Court, the two approaches that courts use when resolving the question of whether a cause of action is the property of a bankruptcy estate are: (1) consult state law to determine when a cause of action accrued; or (2) establish whether, even if a claim arose postpetition under state law, it was, nonetheless, sufficiently rooted in the prebankruptcy past such that it should remain the property of the estate.[15]

---

[15] In *Weiss*, our Supreme Court observed that "[s]ome courts . . . have determined that applicable state law determines when a cause of action accrues and therefore consider that date in relation to the date on which the petition was filed. . . . These courts reason that [a]lthough federal bankruptcy law determines the outer boundary of what may constitute property of the estate, state law determines the nature of a debtor's interest in a given item. . . . Therefore, whereas federal law instructs us that [a cause of action] *may* constitute property of [the debtor's] estate, state law determines whether [the debtor's] interest in the cause of action is sufficient to confer on the estate a property right in the action. . . . The [United States Court of Appeals for the] Second Circuit, whose decisions carry particularly persuasive weight in our resolution of issues of federal law . . . follows this approach. . . .

"Other courts . . . deem the purposes of federal bankruptcy law controlling, namely, to secure for creditors everything of value the debtor may possess in alienable or leviable form when he files his petition, while leaving the debtor free after the petition date to accumulate new wealth in the future. . . . These courts consider whether, even if a cause of action accrued postpetition under state law, that action nonetheless was sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start that it should be regarded as property of the bankruptcy estate. . . . Under this approach, if the claim has sufficient roots in the prebankruptcy past but does not materially impair the bankrupt's ability to obtain the fresh start intended under bankruptcy

Id., 240–43. In both *Weiss* and this court's recent decision in *U.S. Bank Trust, National Assn.* v. *Shuey*, 232 Conn. App. 618, 643–46, 338 A.3d 353 (2025), the court conducted both approaches without determining which is applicable. We do the same here.

Accordingly, we first consider when the plaintiff's CUTPA action accrued under state law.[16] Under Connecticut law, a cause of action accrues when a plaintiff suffers actionable harm; actionable harm, in turn, occurs when the plaintiff discovers, or should discover, through the exercise of reasonable care, that an injury has occurred and that the defendant's actions caused the injury to the plaintiff. See *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 521, 562 A.2d 1100 (1989). "A cause of action, brought by means of a complaint or a counterclaim, is a means of seeking redress for having suffered harm." *Bank of America, N.A.* v. *Aubut*, 167 Conn. App. 347, 372, 143 A.3d 638 (2016).

With respect to the accrual of CUTPA actions, we find instructive CUTPA cases addressing statute of limitations defenses because the date of accrual is central to the analysis. In *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 212, 541 A.2d 472 (1988), our Supreme Court held that the statute of limitations began to run upon "the occurrence of a violation," as dictated by General Statutes § 42-110g (f). (Internal quotation marks omitted.) In holding that the action, commenced in 1984, was barred, the court observed that the allegedly fraudulent conduct occurred prior to 1979. Id., 210–11. The court thus rejected the trial court's reliance on the continuing

law, the claim belongs exclusively to the estate." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) *Weiss* v. *Smulders*, supra, 313 Conn. 240–43.

[16] We note that the accrual approach has also been referred to as the "categorical approach." *In re Desormes*, 497 B.R. 390, 393 (Bankr. D. Conn. 2013).

course of conduct doctrine to toll the statute of limitations. Id., 213. The court concluded that the "act or omission complained of" provision in [General Statutes] § 52-584 was indistinguishable from the "occurrence of a violation" language in § 42-110g (f). Id., 212–13. As such, they warranted similar treatment in the way the alleged event—occurrence, act or omission—triggers the running of the limitation period. In rejecting the claim that the defendant's continuing course of conduct operated to toll the statute of limitations, the court relied on the absence of any allegations of other discrete instances of fraudulent misrepresentation that could have been the basis for a CUTPA violation occurring after 1981. Id. The court stated: "To support a finding of a 'continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." Id., 209.

Our Supreme Court, in *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 46, 717 A.2d 77 (1998) (*Willow Springs*), subsequently clarified its holding in *Fichera*, observing that it "stands for the proposition that an arguably fraudulent or deceptive act that is itself claimed to be a CUTPA violation that occurred more than three years before the filing of the action cannot, by itself, toll the statute of limitations. [*Fichera*] does not stand for the proposition that independent fraudulent or deceptive acts taking place within that three year period that have been undertaken for the purpose of concealing actionable conduct occurring prior to the three year period cannot independently form the basis of a CUTPA violation."

In light of these principles, we turn to the plaintiff's complaint and consider whether her cause of action accrued before or after the filing of the bankruptcy petition. The plaintiff filed this action on March 29, 2021.[17] The filing date of the involuntary bankruptcy action is May 20, 2014. In her complaint, the plaintiff alleges that the defendant, "in order to profit and enrich itself to the detriment of the plaintiff and the mortgage holder" made fraudulent charges "up to and during 2020." The complaint also set forth allegations that include unfair business practices related to loan modification attempts. The complaint also alleged that the defendant's conduct was wilful and "ongoing" and that the defendant "continues pushing forward with foreclosure and accruing legal fees, costs and expenses" despite its false representations that it "continues to work with the plaintiff to restructure her loan and get it out of foreclosure." We acknowledge that the complaint is somewhat vague and that some of the purported conduct of the defendant appears to have occurred prior to the initiation of the bankruptcy proceedings. Nevertheless, our review, considering the complaint in the light most favorable to the plaintiff, as we are obligated to do, reveals that most of the alleged conduct in support of the plaintiff's CUTPA claim occurs well after the filing of the bankruptcy petition. We reiterate that *Willow Springs* held that "independent fraudulent or deceptive acts taking place within the three year" statute of limitations period are not time barred. *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 46. It follows then that a 2021 CUTPA action, premised largely on allegations of independent fraudulent or deceptive acts occurring well after 2014, accrued after the filing of the bankruptcy petition and did not become property of the bankruptcy estate.

---

[17] Notably, the question of whether the plaintiff has alleged a colorable cause of action under CUTPA is not before us.

Considering the second approach under *Weiss*, we conclude for similar reasons that the plaintiff's cause of action was not the property of the bankruptcy estate. Claims that accrue postpetition can remain the property of the bankruptcy estate when they are found to be "sufficiently rooted in the prebankruptcy past and so little entangled with the [debtor's] ability to make an unencumbered fresh start . . . ." *Segal* v. *Rochelle*, 382 U.S. 375, 380, 86 S. Ct. 511, 15 L. Ed. 2d 428 (1966); see also *Mendelsohn* v. *Ross*, 251 F. Supp. 3d 518, 524 (E.D.N.Y. 2017) ("*Segal*'s holding, applied in numerous Second Circuit cases, [is] that property that is acquired post-petition *can* be deemed to be the property of a bankruptcy estate, so long as it is 'sufficiently rooted in the pre-bankruptcy past' of a debtor" (emphasis in original)); *In re Vasquez*, 581 B.R. 59, 67 (Bankr. D. Vt. 2018) ("[a]nalysis of whether a legal cause of action is part of the bankruptcy estate has two components: the general rule that a claim which accrues after the filing of a bankruptcy petition is not part of the estate . . . and the well-established exception to that rule, which brings into the estate a claim that accrues postpetition if it 'is sufficiently rooted in the [debtor's] prebankruptcy past' " (citations omitted)); *In re Desormes*, 497 B.R. 390, 393 (Bankr. D. Conn. 2013) (concluding that "there may be no bright-line test for whether a cause of action that accrues post-petition will be included as part of the bankruptcy estate").

In the present case, the breadth of the plaintiff's complaint has tenuous roots in the prebankruptcy past. The complaint alleged various and ongoing conduct on the part of the defendant, centered mainly in 2020, including the assessment of fraudulent fees, as well as violations of HAMP and RESPA, and repeated and ongoing false representations through the foreclosure process. Put differently, the only relationship that this cause of action has to the prebankruptcy past is that the plaintiff

took out a mortgage, which then was foreclosed on by another party, namely, Deutsche Bank, N.A. Moreover, the defendant concedes that the complaint centers on events that occurred in 2020. See footnote 6 of this opinion. To the extent that the complaint alleges a cause of action arising largely out of postpetition conduct on the part of the defendant, we cannot conclude that the cause of action is part of the bankruptcy estate.

In concluding that the plaintiff did not have standing, the court stated that the plaintiff's cause of action "became the property of the bankruptcy estate at the time of the filing of the bankruptcy"—such filing being, at the latest, in 2015. In so doing, the court seems to have construed the plaintiff's claim as a prepetition cause of action that should have been disclosed upon the initiation of the bankruptcy proceedings. The court's reasoning depends on the faulty assumption that—no matter when a claim comes into existence and no matter what connection (if any) it may have to the scheduled property of the bankruptcy estate—it must be the property of the bankruptcy estate simply because it arose before the final accounting of the estate was completed. As the foregoing discussion makes clear, this is incorrect as a matter of law.

We conclude that the trial court's granting of the motion to dismiss the complaint was improper. The plaintiff has pleaded a cause of action that, as a matter of law, is not property of the bankruptcy estate. For that reason, the court incorrectly concluded that the plaintiff lacked standing to maintain her complaint against the defendant.

The judgment is reversed and the case is remanded with direction to deny the defendant's motion to dismiss and for further proceedings consistent with this opinion.

In this opinion the other judges concurred.